IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SANDRA K. OMAR,<br># 8 AbduRahman bin Samurrah St.<br>Sweileh, Amman,<br>Jordan   11910<br><br>AHMED S. OMAR,<br>624A Smithdale Drive<br>Raleigh, NC 27606<br><br>as Next Friends of<br>SHAWQI AHMAD OMAR,<br>Camp Bucca, Iraq;<br><br>             Petitioners,<br><br>v.<br><br>FRANCIS J. HARVEY,<br>Secretary of the United States Army<br>101 Army Pentagon<br>Room 3E-506<br>Washington, DC 20301-0101;<br><br>MAJOR GENERAL WILLIAM H.<br>BRANDENBURG,<br>Deputy Commanding General (Detainee<br>Operations)/Commanding General, Task<br>Force 134, Multi-National Force-Iraq;<br><br>LIEUTENANT COLONEL TIMOTHY<br>HOUSER,<br>105th Military Police Battalion,<br>Camp Bucca, Iraq  09375;<br><br>             Respondents. | CIVIL ACTION NO. _____<br><br>PETITION FOR WRIT OF<br>HABEAS CORPUS |

I.     INTRODUCTORY STATEMENT

1. Petitioners Sandra K. Omar ("Sandra") and Ahmed S. Omar ("Ahmed") seek a writ of habeas corpus on behalf of and as next friends of Shawqi Ahmad Omar ("Shawqi" or "Mr. Omar"). Sandra is Shawqi's wife and Ahmed is Shawqi's adult son. They are among Mr. Omar's closest living relatives.

2. Mr. Omar is a United States citizen who has been illegally imprisoned by the United States military in Iraq for more than one year. He has been detained virtually *incommunicado*, without notice, without access to counsel, without charge, without warrant, and without even elementary due process. He has repeatedly asserted his innocence and requested legal counsel. Because these requests have been unavailing, his wife and son, both United States citizens, petition this Court for a writ of habeas corpus on Mr. Omar's behalf.

3. On information and belief, Mr. Omar was living in Baghdad, Iraq with his ten-year-old-son when he was arrested at his home on October 29, 2004. After more than twelve months of detention, Mr. Omar continues to be held in United States detention at Camp Bucca, in southern Iraq. Mr. Omar's family members have not received any information from his captors about the duration or legal basis for his detention, despite their repeated requests.

4. The United States Constitution, the laws of the United States, and the binding obligations of international law all prohibit the United States from arresting its citizens and denying them access to counsel and to any legal process by which they may challenge the basis of their detention. Mr. Omar's continued detention, now more than one year's duration, violates numerous constitutional, statutory, and international law provisions, including:

    a) The fundamental right to due process of law guaranteed by the Fifth Amendment of the United States Constitution;

    b) The fundamental right to be released absent a criminal proceeding or judicial process under the Suspension Clause of the United States Constitution, Article I, § 9, cl. 2;

    c) The fundamental right to assistance of counsel protected by the Fifth and Sixth Amendments;

    d) The right to be free from arbitrary and indefinite executive detention pursuant to the Citizen Non-Detention Act, 18 U.S.C. § 4001(a); and

    e) The right to be free from arbitrary and indefinite detention as guaranteed under, *inter alia*, the International Convention on Civil and Political Rights and customary international law, including the customary international law of armed conflict.

5. Accordingly, Petitioners Sandra and Ahmed Omar respectfully seek relief from this Court in the form of a writ of habeas corpus. Petitioners specifically request that this Court issue such a writ compelling Respondents to give Mr. Omar access to counsel, and either to release Mr. Omar or to provide a lawful basis for his continued detention.

## II.     JURISDICTION AND VENUE

6. Petitioners invoke this Court's jurisdiction pursuant to 28 U.S.C. §§ 2241(a), (c)(1) & (c)(3); 2242 and 2243. In addition, this Court has jurisdiction under the United States Constitution, Article I, § 9, cl. 2 (the Suspension Clause), Article III, and the Due Process Clause of the Fifth Amendment because those provisions entitle Petitioners to a judicial forum in which to contest the legal validity of Mr. Omar's detention. Petitioners further invoke this Court's

jurisdiction under 28 U.S.C. §§ 1331, 1350, 1651 (the All Writs Act), §§ 2201 & 2202 (the Declaratory Judgment Act).

6. Mr. Omar is legally entitled to challenge his detention. The United States Supreme Court recently held that federal habeas corpus jurisdiction "requires nothing more" than a claim that a petitioner is "being held in federal custody in violation of the laws of the United States" once personal jurisdiction over a custodian is established. *Rasul v. Bush*, 543 U.S. 466, __, 124 S. Ct. 2688, 2698 (2004).

7. Camp Bucca is within the plenary and exclusive "jurisdiction or dominion exercised in fact" of the United States, such that this Court has jurisdiction over a claim brought by an American citizen imprisoned there. *Id*. at 2697.

8. This Court has personal jurisdiction over Respondents because they are officers or agents of the United States carrying out their responsibilities in the District of Columbia, having substantial contacts in the District, and being physically located within this Court's territorial jurisdiction.

9. Venue is proper in the District of Columbia for this writ of habeas corpus because one or more of the Respondents resides within the jurisdiction of this Court and is amenable to service of process in the district. 28 U.S.C. §§ 1391(a), (b) & (e).

### III.   PARTIES

10. Petitioner Sandra K. Omar ("Sandra") is Shawqi Omar's wife and an American citizen who currently resides in Amman, Jordan. Her declaration is attached as Exhibit 1. Sandra has repeatedly sought information about and access to her husband since his arrest. *Exhibit 1*

*(Sandra Omar Decl.) at ¶¶ 11-15; 21-23; 25; 29*.  United States military authorities have failed to provide Sandra with any reason for Mr. Omar's continued detention.  Because Mr. Omar has been denied access to legal counsel and to the courts of the United States, Sandra acts as his next friend.  *See id. at ¶¶ 19; 26-28*.

11. Petitioner Ahmed Omar ("Ahmed") is Mr. Omar's eldest son, and an American-born United States citizen who resides in North Carolina.  His declaration is attached at Exhibit 2.  Ahmed has been deeply concerned about his father's health and safety since the beginning of Mr. Omar's detention, and has been one of a handful of close relations who has received correspondence from Mr. Omar, and who has attempted to correspond with Mr. Omar.  *See Exhibits 6-9; 15 (correspondence from Shawqi Omar to Ahmed Omar)*.  Because Mr. Omar has been denied access to counsel and to the courts of the United States, Ahmed acts as his next friend.

12. Petitioner Shawqi Omar is a naturalized citizen of the United States of America.  His United States Passport number is 710391701.  *See Exhibit 3 (copy of passport)*.  His naturalization number is 11958854.  *See Exhibit 4 (copy of naturalization certificate)*.  He is incarcerated in United States military custody at Camp Bucca Theater Internment Facility in the vicinity of Umm Qasr, in southern Iraq.  On information and belief, his detainee number at Camp Bucca is 200165.  *See Exhibit 1 (Sandra Omar Decl.) at ¶ 16*.  Mr. Omar has requested that his captors provide him with counsel, but to date has been denied access to counsel, despite having invoked his right to counsel several times in letters to his family.  *See infra at ¶ 29 (describing Mr. Omar's repeated attempts to obtain counsel)*.

13. Petitioners Ahmed and Sandra Omar are dedicated to representing the interests of Shawqi Omar, with whom they share a close, familial relationship.  By contrast, Mr. Omar cannot review, sign, or approve this Petition or appear in his own behalf because he remains in almost *incommunicado* confinement at Camp Bucca, Iraq.  Moreover, Mr. Omar lacks access to an attorney or to United States courts, despite his repeated requests for counsel.  Denied all access to the United States Consular Service and provided only intermittent contact with representatives of the International Committee of the Red Cross ("ICRC"), Mr. Omar's sole contact with the outside world is via sporadic telephone calls (six over the course of a year) and heavily censored hand-written correspondence to his family in communications that are restricted by the military authorities to "family news only."  In short, Mr. Omar is completely incapable of acting on his own behalf.  Accordingly, Ahmed and Sandra Omar, his son and wife respectively, file suit on his behalf.

14. Respondent Francis J. Harvey is the Secretary of the United States Army.  Respondent Harvey is the senior official of the Department of the Army and is responsible for all matters related to the United States Army.  Respondent Harvey has authority over the custody and control of United States Armed Forces detainee operations in Iraq, including those held at Camp Bucca and the custodian responsible for Mr. Omar's detention.  He is sued in his official capacity.

15. Respondent Major General William H. Brandenburg is Deputy Commanding General of Detainee Operations and Commanding General of Task Force 134, Multi-National Force-Iraq.  Respondent Brandenburg has responsibility for detainee operations for United States Armed Forces in Iraq.  Respondent Brandenburg is charged with maintaining custody and

control over all of the approximately 11,000 prisoners of the United States Army in Iraq, including those at Camp Bucca. He is sued in his official capacity.

16. Respondent Lieutenant Colonel Timothy Houser is with the 105th Military Police Battalion and is the commanding officer at Camp Bucca, Iraq. Respondent Houser is Shawqi's immediate custodian at Camp Bucca.

### IV.   STATEMENT OF FACTS
#### A.   Background to Mr. Omar's Arrest

17. Shawqi Omar is an American citizen. Born to Jordanian parents in Kuwait on December 17, 1961, Mr. Omar came to the United States on a student visa in 1979 at age seventeen. *See Exhibit 1 (Sandra Omar Decl.) at ¶ 4*. In 1983, he married a United States citizen, Sandra Kay Sulzle (now Sandra Omar), in Mobridge, South Dakota. *See id. at ¶ 3*. With his new wife, Mr. Omar moved to Minnesota, where he served in the Minnesota National Guard. *Id.* He became a United States citizen on November 17, 1986. See Exhibit 4. He and Sandra have six children together, all of whom are United States citizens. *See Exhibit 1 (Sandra Omar Decl.) at ¶ 7.*

18. At some point following the removal of the Saddam Hussein dictatorship, Mr. Omar traveled to Iraq with his ten-year-old son, Salahedin, seeking contract work in the reconstruction of that country. *See Exhibit 1 (Sandra Omar Decl.) at ¶ 9*. On information and belief, he intended to return to the United Arab Emirates, where Petitioner Sandra Omar was living at the time, in time for the Eid holiday in November 2004.

### B. Mr. Omar's Arrest and Detention

19. United States soldiers arrested Mr. Omar in front of his ten-year-old son at his Baghdad residence on October 29, 2004. *See Exhibit 1 (Sandra Omar Decl.) at ¶ 11*. Mr. Omar was beaten by soldiers in front of family members during the course of the arrest. *Id.*

20. Since October 29, 2004, Mr. Omar has been held by United States Armed Forces in Iraq, while his family has received no formal notification of the grounds for his detention. *See Exhibit 2 (Ahmed Omar Decl.) at ¶ 8*. Mr. Omar was initially held at Camp Cropper, which is close to Baghdad International Airport, and is currently being held at Camp Bucca, near Umm Qasr. *See Exhibit 1 (Sandra Omar Decl.) at ¶ 16; Exhibit 5 (May 19, 2005 letter from Amman ICRC)*.

### C. Petitioners' Attempts To Contact Mr. Omar

21. On or about November 10, 2004, Sandra Omar learned from family that her husband had been arrested. *See Exhibit 1 (Sandra Omar Decl.) at ¶ 11*. At that time, Sandra was also advised that the same United States forces had confiscated her son Salahedin's United States passport. After much difficulty, the ICRC was able to secure Shawqi's signature on the form needed to retrieve Salahedin's passport. Sandra received the passport in May 2005, over six months after it had been confiscated. *Id.* at ¶ 22.

22. Sandra contacted the American Embassy in Baghdad, Iraq, seeking information about her husband's whereabouts and the reasons for his detention. *See Exhibit 1 (Sandra Omar Decl.) at ¶ 11*. On December 22, 2004, Marie Damour, United States Consul in Baghdad, informed Sandra that Mr. Omar was being held "under United States military care, custody, and control," and that he had recently been seen by the ICRC. *See id. at ¶ 13*.

23. Sandra Omar communicated with Ms. Damour several times (via electronic mail and telephone) between December 6, 2004 and April 4, 2005.  On February 16, 2005, almost four months after Shawqi Omar was first arrested and imprisoned by United States Armed Forces in Iraq, Ms. Damour informed Sandra that the United States military had denied the United States Consular Service's request to meet with Shawqi.  *See Exhibit 1 (Sandra Omar Decl.) at ¶ 15.*

24. On January 12, 2005, Ms. Damour informed Sandra Omar by email that she had received verbal agreement from the detaining authority to visit Mr. Omar.  *See Exhibit 1 (Sandra Omar Decl.) at ¶ 14.*  Three months later, however, Ms. Damour was still in the process of trying to secure permission from the United States military to see Mr. Omar.  On April 4, 2005, she emailed Sandra and stated that the United States Armed Forces had denied the United States Consul visitation permission.  Describing her efforts, Ms. Damour stated that she was "afraid that we have been stymied at every turn."  *Id. at ¶ 15.*

25. On October 27, 2005, Mr. Omar was transferred temporarily to Abu Ghraib prison near Baghdad, where he was visited by United States consular personnel.  He was not given access to a lawyer at this time.  His family was not informed in advance of the visit.  *See Exhibit 1 (Sandra Omar Decl.) at ¶ 24.*

26. Mr. Omar has been permitted to correspond with his family only via handwritten letters and via six brief telephone calls to his wife Sandra and other family members.  Written correspondence is transmitted through the ICRC.  Many of Shawqi Omar's letters to his relatives, which the military authorities limit to "family news only," contain redacted or

blacked-out text. *See, e.g., Exhibit 6 (April 29, 2005 letter from Shawqi Omar to Ahmed Omar).*

27. Mr. Omar has been subjected to days of interrogation without a lawyer present against his express requests. Mr. Omar stated that he had "requested [a lawyer] the first min[ute] [he] was arrested." *Exhibit 7 (March 18, 2005 letter from Shawqi Omar to Ahmed Omar).* In a March 11, 2005 letter, Mr. Omar has stated that he has been questioned "for 8 days with no lawyer" even though "I asked them to get me a lawyer over here." *Exhibit 8 (March 11, 2005 letter from Shawqi Omar to Ahmed Omar).*

28. Not all the correspondence from Mr. Omar's family reaches him in Camp Cropper and Camp Bucca. In a February 11, 2005 letter addressed to Ahmed, Mr. Omar asserted that he had not received any letters from family members. *See Exhibit 9 (February 11, 2005 letter from Shawqi Omar to Ahmed Omar).* On May 20, 2005, Shawqi indicated that he had only received eleven letters from his family during the previous seven months. *See Exhibit 10 (May 20, 2005 letter from Shawqi Omar to Sandra Omar).*

### D. Requests for Counsel and Assertions of Innocence

29. Mr. Omar has requested counsel on at least seven occasions, as evidenced by correspondence with his family. *See Exhibit 13 (March 18, 2005, letter from Shawqi Omar to Sandra Omar) (stating that "my only Demand is to see a Lawyer" and that Mr. Omar had been requesting a lawyer "for the last 5 months, But nothing"); id. ("[M]y only Demand is to see a Lawyer"); see also Exhibit 7 (March 18, 2005 letter from Shawqi Omar to Ahmed Omar) ("I have to have a lawyer ASAP.") Exhibit 8 (March 11, 2005 letter from Shawqi Omar to Ahmed Omar) ("You need to find a lawyer to take my case in the States"); Exhibit 9 (February 11,*

*2005 letter from Shawqi Omar to Ahmad Omar) (requesting Ahmed to find "any one willing to be my lawyer in here"); Exhibit 6 (April 29, 2005 letter from Shawqi Omar to Ahmed Omar) (asking Ahmed "to sue everyone and contact every newspaper"); Exhibit 11 (May 6, 2005, letter from Shawqi Omar to Sandra Omar) (noting that he "didn't see any lawyer"); Exhibit 12 (April 22, 2005, letter from Shawqi Omar to Sandra Omar) ("I need a lawyer for my case in the USA, I have not seen any lawyer").*

30. Mr. Omar expressed the gravity of his request for counsel in the form of a hunger strike, telling his captors that he would not eat until he got a lawyer. He wrote to Ahmed that he would take "No food, water, Medicine, until I see a lawyer." *Exhibit 7 (March 18, 2005 letter from Shawqi Omar to Ahmed Omar).*

31. Mr. Omar also continually asserted that he is innocent of wrongdoing. In a May 20, 2005 letter to his wife, for example, he emphatically insisted that "I did not do anything wrong." *Exhibit 10 (transcript of May 20, 2005, letter from Shawqi Omar to Sandra Omar).*

### E.  Conditions of Mr. Omar's Confinement

32. Mr. Omar has only sporadic visits from the ICRC, which monitors detention conditions and prisoners' well-being in Iraq. In a letter dated February 11, 2005, Mr. Omar indicated he had had no contact with the ICRC for more than two months. *See Exhibit 9 (February 11, 2005 letter from Shawqi Omar to Ahmed Omar).*

33. Given the intermittent and fragmentary communications from Mr. Omar, Petitioners Sandra and Ahmed are deeply concerned about Mr. Omar's physical and psychological well being

after more than twelve months of detention by the United States military in Iraq.  *See Exhibit 1 (Sandra Omar Decl.) at ¶ 29; Exhibit 2 (Ahmed Omar Decl.) at ¶ 10.*

34. Mr. Omar has explained that he had been on a hunger strike taking only liquids: "[O]n the 17th off [sic] March 2005, I started a full strike where I will not take anything.  No food, No liquid, No medicine, No IV." *Exhibit 13 (March 18, 2005, letter from Shawqi Omar to Sandra Omar).*  The same day, Mr. Omar wrote to his son that he would remain on a "full strike[.]  No food, water, Medicine, until I see a lawyer." *Exhibit 7 (March 18, 2005 letter from Shawqi Omar to Ahmed Omar).*

35. Mr. Omar has been held in solitary confinement, his health is deteriorating, and he has lost a substantial amount of weight.  *See, e.g., Exhibit 14 (July 22, 2005 letter from Shawqi Omar to Sandra Omar) (Mr. Omar is in solitary confinement); Exhibit 8 (March 11, 2005 letter from Shawqi Omar to Ahmed Omar); Exhibit 9 (February 11, 2005 letter from Shawqi Omar to Ahmed Omar); Exhibit 15, (January 6, 2005 letter from Shawqi Omar to Ahmed Omar).  In a further letter dated July 22, 2005, Shawqi wrote that he is "in solitary in Bucca [and] my health is not good . . . ." Exhibit 14 (true transcript of July 22, 2005 letter from Shawqi Omar to Sandra Omar).*  Four months earlier, he had stated that he had "already lost 60 lbs." *Exhibit 7 (March 18, 2005 letter from Shawqi Omar to Ahmed Omar); see also Exhibit 11 (May 6, 2005, letter from Shawqi Omar to Sandra Omar) (noting that Mr. Omar had lost 35 lbs).*

### F. Fear of Unlawful Transfer

36. Petitioners Sandra and Ahmed have reason to believe that the United States military may turn Mr. Omar over to the custody of Iraqi authorities in an effort to evade the strictures of United

States law.  On or about June 22, 2005, Mr. Omar was allowed a brief opportunity to speak by telephone with his wife.  During that conversation, Mr. Omar told her that he had been told that he may be transferred to the custody of Iraqi authorities.  *See Exhibit 1 (Sandra Omar Decl.) at ¶¶ 17, 18.*

37. On November 1, 2005, Petitioner Sandra was informed by email by the United States Consul that "under Iraqi law, [Mr. Omar] has a right to legal counsel should he appear before an investigating judge on criminal charges."  Petitioner Sandra believes this refers to a potential transfer to Iraqi custody.  *See Exhibit 1 (Sandra Omar Decl.) at ¶ 25.*

38. Petitioners Sandra and Ahmed, who are Shawqi's closest family members, know Mr. Omar wishes them to proceed via a habeas corpus petition to secure his release.

**CLAIMS FOR RELIEF**

**FIRST CLAIM FOR RELIEF**
**UNLAWFUL DETENTION UNDER THE**
**FIFTH AMENDMENT TO THE UNITED STATES CONSTITUTION**

39. Petitioners reallege and incorporate by reference each and every allegation contained in the preceding paragraphs as if set forth fully herein.

40. Respondents' arrest and arbitrary, indefinite detention without process of Mr. Omar violates the "most elementary of liberty interests – the interest in being free from physical detention by one's own government."  *Hamdi v. Rumsfeld*, 542 U.S. 507, __, 124 S. Ct. 2633, 2646 (2004) (O'Connor, J., plurality op.).  The United States Constitution affords Shawqi Omar, as a United States citizen, its full protection.

41. The United States' detention of Mr. Omar is arbitrary and unlawful in at least two respects. First, Mr. Omar has not been afforded access to counsel or any adequate procedure or an opportunity to be heard or notice to permit him to show his innocence of any and all wrongdoing. The Due Process Clause of the Fifth Amendment to the Constitution guarantees Mr. Omar the right to adequate notice of the basis for his detention and a meaningful opportunity to be heard to challenge his detention. Because Mr. Omar has been denied notice and any opportunity to be heard, his detention violates procedural due process.

42. Second, the United States has not charged Mr. Omar with a crime or otherwise articulated the grounds for Mr. Omar's detention. The unjustified detention of a person without trial is a violation of substantive Due Process rights.

## SECOND CLAIM FOR RELIEF
## UNLAWFUL DETENTION UNDER THE SUSPENSION CLAUSE

43. Petitioners reallege and incorporate by reference each and every allegation contained in the preceding paragraphs as if set forth fully herein.

44. Respondents' arrest and continued detention of Mr. Omar violates the United States Constitution, Habeas Corpus Suspension Clause, Article I, § 9, cl. 2, because the Suspension Clause guarantees Mr. Omar the right to be charged criminally or released. Mr. Omar has been and continues to be detained without charge.

45. Respondents' arrest and continued detention of Mr. Omar violates the Habeas Corpus Suspension Clause, Art. I, § 9, cl. 2, because the Suspension Clause guarantees Mr. Omar the right to an adequate and meaningful judicial process. Mr. Omar has been and continues to be detained without such a process.

**THIRD CLAIM FOR RELIEF**
**UNLAWFUL DETENTION CONTRARY TO THE CITIZEN NON-DETENTION ACT**

46. Petitioners reallege and incorporate by reference each and every allegation contained in the preceding paragraphs as if set forth fully herein.

47. Respondents' arrest and detention of Mr. Omar violates the Citizen Non-Detention Act, 18 U.S.C. § 4001(a). The Act commands that: "No citizen shall be imprisoned or otherwise detained by the United States except pursuant to an Act of Congress." No Act of Congress authorizes the continued detention of Mr. Omar, and therefore his continued detention violates the Citizen Non-Detention Act.

**FOURTH CLAIM FOR RELIEF**
**UNLAWFUL DETENTION CONTRARY TO ARMY REGULATIONS**

48. Petitioners reallege and incorporate by reference each and every allegation contained in the preceding paragraphs as if set forth fully herein.

49. Respondents' arrest and detention of Mr. Omar violates Army Regulation 190-8, which prohibits the prolonged detention of civilians. *See* Army Reg. 190-8 at 1-6(g) ("Persons who have been determined by a competent tribunal not to be entitled to prisoner of war status may not be executed, imprisoned, or otherwise penalized without further proceedings to determine what acts they have committed and what penalty should be imposed.")

**FIFTH CLAIM FOR RELIEF**
**PROLONGED ARBITRARY DETENTION IN VIOLATION OF INTERNATIONAL LAW**

50. Petitioners reallege and incorporate by reference each and every allegation contained in the preceding paragraphs as if set forth fully herein.

51. Respondents have breached, and continue to breach their obligations under customary international law, accepted by and binding on the United States, by seizing and continuing to hold Mr. Omar, a United States citizen, without justification, charge, or judicial proceeding. International law, including the International Covenant on Civil and Political Rights and the customary international law of armed conflict, prohibits prolonged arbitrary detention.

**SIXTH CLAIM FOR RELIEF**
**DENIAL OF ACCESS TO COUNSEL UNDER THE FIFTH AMENDMENT**

52. Petitioners reallege and incorporate by reference each and every allegation contained in the preceding paragraphs as if set forth fully herein.

53. Respondents have denied Mr. Omar any access to counsel, despite his repeated requests. This violates the Fifth Amendment to the Constitution of the United States, which prohibits the government from denying individuals in its custody access to counsel when they request it.

**SEVENTH CLAIM FOR RELIEF**
**DENIAL OF ACCESS TO COUNSEL UNDER THE SIXTH AMENDMENT**

54. Petitioners reallege and incorporate by reference each and every allegation contained in the preceding paragraphs as if set forth fully herein.

55. Respondents have denied Mr. Omar any access to counsel, despite his repeated requests. Their conduct violates the Sixth Amendment to the Constitution, which grants Mr. Omar the right to be informed of the nature and cause of the accusation against him and to be provided the assistance of counsel in his defense.

**PRAYER FOR RELIEF**

WHEREFORE, Petitioners pray for relief as follows:

(a) Grant Petitioners Ahmed Omar and Sandra Omar "Next Friend" status for Shawqi Omar, the real party in interest in this Petition;

(b) Order Respondents to ensure that Real Party Shawqi Omar receives a copy of this Petition, and any Order this Court may issue;

(c) Order Respondents to allow counsel to meet and confer with Mr. Omar, in private and unmonitored attorney-client conversations, both by phone and in person;

(d) Order Respondents to cease all interrogations of Mr. Omar, whether direct or indirect;

(e) Enjoin Respondents from transferring Mr. Omar to the authority of any other government, sovereign, country, or agency until this Court has an opportunity to consider and decide the merits of this Petition;

(f) Issue a Writ of Habeas Corpus requiring Respondents to release Shawqi Omar from detention, and/or requiring Respondents to bring Shawqi Ahmad Omar before a court of competent jurisdiction in the United States to show just cause for his continued detention;

(g) Convene an evidentiary hearing and order Respondents to produce Shawqi for the hearing, either by video or in person; and

(h) Order such other relief as the Court may deem necessary and appropriate to protect Mr. Omar's rights, and his rights.

- 17 -

Dated: December 12, 2005

Respectfully submitted,

*Susan L. Burke*

Susan L. Burke (D.C. Bar # 414939)
Heather L. Allred
BURKE PYLE LLC
3527 Lancaster Avenue
Philadelphia, PA 19104
Telephone:  (215) 387-4705
Facsimile:   (215) 387-4713

Joseph Margulies
MACARTHUR JUSTICE CENTER,
UNIVERSITY OF CHICAGO LAW SCHOOL
1111 East 60th Street
Chicago, IL 60637
Telephone:  (773) 702-9560
Facsimile:   (773) 702-0771

Aziz Z. Huq
Jonathan Hafetz
BRENNAN CENTER FOR JUSTICE, NEW YORK UNIVERSITY LAW SCHOOL
161 Avenue of the Americas
12th Floor
New York, NY 10013
Telephone:  (212) 998-6730
Facsimile:   (212) 995-4550

*Counsel for Petitioners*