# EXHIBIT 1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| SANDRA K. OMAR, *et al.*, | ) | |
| | ) | |
| Petitioners, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION No. 05-2374 (RMU) |
| | ) | |
| FRANCIS J. HARVEY, *et al.*, | ) | |
| | ) | |
| Respondents. | ) | |
| | ) | |

## DECLARATION OF JOHN D. GARDNER

1. Major General John D. Gardner, pursuant to 28 U.S.C. § 1746, hereby declare and say as follows:

1. I currently serve as the Deputy Commanding General for Detainee Operations (DCG-DO), Multi-National Force – Iraq (MNF-I). In this capacity, I am charged with the responsibility for oversight in several areas, including:

- Safeguard and secure all persons who are in custody at the MNF-I detention centers and protected areas.

- Operation and focus of the MNF-I Joint Interrogation and Debriefing Center to provide high-quality actionable strategic, operational, and tactical intelligence to the warfighters.

- Maximize efficiency and provide due process in the referral of security internees and detainees to the Iraqi legal system.

- Integrate Iraqi leadership and partnership in all facets of Detainee Operations.

-1-

I make these statements based upon my personal knowledge and upon information made available to me in the performance of my official duties.

2. MNF-I is a coalition force consisting of approximately twenty-seven different nations that operates in accordance with the mandate of United Nations Security Council Resolutions 1546 (2004) and 1637 (2005). Resolution 1637 extended the mandate of MNF-I for another year on behalf of and at the request of the Iraqi Government. MNF-I is authorized "to take all necessary measures to contribute to the maintenance of security and stability in Iraq." Such measures include the ability to detain individuals "where this is necessary for imperative reasons of security."

3. Mr. Shawqi Omar, a dual American-Jordanian citizen, is in MNF-I custody pursuant to UNSCR 1546 and 1637, which allow MNF-I to intern individuals who are considered to be an imperative threat to the security of Iraq. He was born in Kuwait and has been living in Iraq at different intervals since 2002. He has been under investigation by many foreign intelligence agencies, including Iraq's. He was captured by MNF-I on October 30, 2004, in a raid targeting associates of Abu Musab al Zarqawi, the recognized leader of al-Qaeda in Iraq who has committed numerous acts of terrorism and violence in Iraq, including killing civilians and taking hostages. Mr. Omar is named on the same Jordanian indictment as Abu Musab al Zarqawi for plotting an unsuccessful chemical attack in Jordan. Mr. Omar is personally related to al Zarqawi by marriage. His second wife and al Zarqawi's first wife are sisters. Mr. Omar's son, Ahmad, is married to the daughter of Abu Muhammad al Maqdesi, who is al Zarqawi's spiritual advisor. Maqdesi has been imprisoned multiple times in Jordan for crimes against the Jordanian government. There is testimonial evidence of Mr. Omar's numerous private meetings with al

Zarqawi. He was captured harboring an Iraqi insurgent and four Jordanian foreign fighters who illegally entered Iraq. In their sworn statements, the four Jordanians captured with Mr. Omar state that they traveled illegally to Iraq from Jordan for the express purpose of committing militant Jihad against American and other Coalition Forces. The Iraqi insurgent captured with Mr. Omar also admits in his sworn statement to joining the insurgency for the purpose of militant Jihad and to attack Coalition Forces. Each of the five detainees captured with Mr. Omar admitted that while living in Mr. Omar's home, they conducted surveillance of potential kidnap victims within Baghdad and they conducted weapons training in Fallujah. The four Jordanians stated that Mr. Omar directed and participated in the insurgent cell activities of selection and surveillance of potential kidnap victims. All five insurgents admit that Mr. Omar made comments about his fluency in English, which allowed him to visit Baghdad hotels in order to entice foreigners to return to Mr. Omar's home for the purpose of their kidnap and ransom.

4. Mr. Omar has multiple ties to the Zarqawi terrorist network in Iraq and is believed to have acted as al Zarqawi's personal emissary to insurgent groups in several cities in Iraq. There is evidence that indicates Mr. Omar provided aid to the Zarqawi network in Iraq, including such actions as: facilitating the Zarqawi network's connection to other terrorist groups, aiding the movement of foreign fighters into Iraq, and aiding in the planning and execution of kidnappings in Iraq. At the time of his capture, Mr. Omar had several weapons and Improvised Explosive Device (IED)-making materials in his home. Additional information that is classified regarding Mr. Omar can be made available for the Court's ex parte, in camera review at the Court's request.

5. Following Mr. Omar's capture, a panel of three officers conducted a proceeding that exceeded the due process requirements of Article 5 of the Third Geneva Convention of 1949.

-3-

The panel reviewed the facts and circumstances surrounding the capture, interviewed witnesses, and considered available intelligence information. Mr. Omar was present at the hearing and had the opportunity to hear the basis on which he was being detained, to make a statement, and to call witnesses who were immediately available. The panel determined that Mr. Omar did not meet the criteria for status as a prisoner of war under the Third Geneva Convention; that Mr. Omar did meet the criteria for status as a security internee under the law of war; and that he did meet the definition of an enemy combatant in the war on terrorism.

6. In August 2005, after consultation with U.S. authorities, as appropriate in the case of a U.S. national such as Mr. Omar, MNF-I ascertained that the Iraqi Judiciary would proceed with charging Mr. Omar in the Central Criminal Court of Iraq (CCCI). In November 2005, U.S. authorities indicated no objection to Iraqi plans to prosecute Mr. Omar in the CCCI. Mr. Omar is currently pending an Investigative Hearing before the CCCI. Such action before the CCCI is typical of actions taken with regard to other foreign fighters captured in Iraq by MNF-I, for which credible evidence of their crimes exist.

7. The CCCI in Baghdad is the only court in Iraq with nationwide jurisdiction, thereby eliminating venue and jurisdictional issues across the various courts of session among the 18 provinces. The CCCI has discretionary investigative and trial jurisdiction over all crimes that threaten the sovereignty of Iraq and crimes committed against Coalition Forces, including acts of terrorism. The CCCI operates under the Iraqi Penal Code of 1969 and the 1971 Iraqi Law on Criminal Proceedings. It is an Iraqi Court under Iraqi governance, and it is composed of Iraqi Judges who have attended the Iraqi Judicial School and is administered by the Iraqi Higher Juridical Council.

-4-

8. The CCCI operates using a modified continental, inquisitorial judicial process, and not the English adversarial judicial system. The CCCI is divided into two chambers – an investigative court and a felony trial court. Under this system, the investigative judge conducts an investigative hearing in chambers to determine if there is sufficient evidence to warrant a trial. Witnesses provide sworn testimony, and the investigative judge questions the witnesses to clarify their testimony. Defense counsel is allowed to present questions to the court for review. If the investigative judge accepts any question, he asks the question of the witness. Upon the conclusion of evidence presentation, the investigative judge questions the defendant, who is not required to respond. The investigative judge makes the determination of whether there are sufficient grounds to forward the case to the Trial Court. If he finds there is sufficient evidence, he forwards a report of the investigative proceeding and recommends charges to the Trial Court. If he determines there is insufficient evidence, he orders the release of the defendant. The Trial Court sits in panels of three judges, who review the findings of the investigative judge and listen to any additional evidence in a formal courtroom setting. After a case is forwarded for trial, a Trial Panel may return the case for further investigation before a date is set for trial. Trial Panel judges may ask questions, similar to the process used in the investigative hearing. Prosecutors and defense counsel have a more limited role than do their counterparts in the American and British adversarial systems. Upon the conclusion of the case, the Trial Panel judges enter a verdict and either release the defendant or sentence him, which can include a prison term. Sentences imposed by the Trial Court are those prescribed in the Iraqi Penal Code as amended by CPA orders. Sentences may be reduced at the discretion of the Chief Judge of the Trial Court while appeals are made to the Iraqi Court of Cassation.

9. Defendants are represented at the investigative hearing by counsel retained at their

own expense or, more typically, by court-appointed defense counsel. Defense counsel at the investigative hearing function primarily to ensure the defendant's procedural rights are not violated. The defendant is also entitled to court-appointed defense counsel for trial.

10. MNF-I maintains physical custody of detainees while their cases are being heard by the CCCI. They are held as security internees in accordance with UN Security Council Resolutions 1546 and 1637 until the case is resolved. If they are convicted and sentenced to a term of imprisonment, the Trial Court will issue an Order, which is sent to the DCG-DO. The DCG-DO will issue a subsequent transfer order releasing the detainee to an Iraqi Ministry of Justice facility.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on the 7th day of February 2006.

JOHN D. GARDNER
Major General, U.S. Army
Deputy Commanding General
Detainee Operations