IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

SANDRA K. OMAR, *et al.*,

Petitioners,

v.

FRANCIS J. HARVEY, *et al.*,

Respondents.

Civil Action No. 05-2374 (RMU)

**RESPONDENTS' RESPONSE TO ORDER TO SHOW CAUSE**
**SUPPORTING DISMISSAL OF THE PETITION FOR HABEAS CORPUS**

Petitioner Shawqi Omar ("Mr. Omar"), through his purported next friends, seeks a writ of habeas corpus from this Court based on the faulty assumption that he is in the custody of the United States. See Petition for Writ of Habeas Corpus ("Petition") ¶¶ 12, 20 (dkt. no. 1) (Dec. 12, 2005). For the reasons set forth more fully in Respondents' Opposition to Petitioners' *Ex Parte* Motion for a Temporary Restraining Order ("Respondents' Opposition") (dkt. no. 12) (Feb. 7, 2006), which respondents adopt by reference and incorporate (together with exhibits) as if set forth fully herein, the Court lacks jurisdiction to consider the Petition because Mr. Omar is not in the custody of the United States, but rather is in the custody of a multinational military force in a foreign country – Multinational Force - Iraq ("MNF-I"). In addition, jurisdictional discovery is not warranted or necessary for the Court to satisfy itself that its jurisdiction does not extend to Mr. Omar's habeas petition. Furthermore, even if the Court were to reach the remarkable conclusion that it has jurisdiction over this habeas petition, the information and arguments previously set forth in Respondents' Opposition establish the factual and legal basis for Mr. Omar's detention and demonstrate why this Court should refrain from ordering the relief

petitioners seek. For all of these reasons, the writ should not issue and the Petition should be dismissed.

## ARGUMENT

### I. Case Precedent Confirms that Federal Courts Lack Jurisdiction to Entertain a Petition for Habeas Corpus Brought by a Petitioner in the Custody of a Multinational Military Force in a Foreign Country.[1]

As set forth in Respondents' Opposition, the Supreme Court's decision in Hirota v. General of the Army MacArthur, 338 U.S. 197 (1948) (per curiam), directly supports the proposition that federal courts lack jurisdiction to consider a habeas petition from a petitioner in the custody of a multinational military force in a foreign country. See Respondents' Opposition at 16-17. Hirota's force is not diminished by the fact that the petitioners in that case were Japanese nationals, not U.S. citizens. See Hirota, 338 U.S. at 198. A federal court's habeas jurisdiction is not determined primarily by the status of the petitioner but rather by the court's authority over the custodian. See 28 U.S.C. § 2242; Keefe v. Dulles, 222 F.2d 390, 392 (D.C. Cir. 1954); see also Rasul v. Bush, 542 U.S. 466, 481, 484 (2004) (indicating that federal habeas statute draws no distinction between Americans and aliens held in federal custody and that United States courts have traditionally been open to nonresident aliens). In Hirota, the petitioners were held by an American general who maintained custody of them under the authority of the Allied Powers. See id. at 199 (Douglas, J., concurring). Under those circumstances, the Court determined that United States courts could not consider their habeas petitions. Id. at 198. The Court did not discuss the issue of the petitioners' nationality in

---

[1] As noted, respondents incorporate herein by reference the entirety of Respondents' Opposition.

Hirota.[2] Accordingly, the fact that Mr. Omar is a dual American-Jordanian citizen does not free him from the rationale of Hirota. This result is confirmed by the fact that even in cases involving U.S. citizens, courts have denied requests for habeas relief from such citizens when they are not in the custody of the United States, but rather are detained by a non-U.S. entity. See, e.g., Keefe v. Dulles, 222 F.2d 390 (D.C. Cir. 1954); Duchow v. United States, 1995 WL 425037 (E.D. La. 1995).[3]

Hirota's impact on Mr. Omar's case similarly is not diminished by the fact that the petitioners there were held in post-conviction detention, and Mr. Omar's current detention is for imperative reasons of security while he also awaits an investigative hearing before the Central Criminal Court of Iraq. See Hirota at 198. Irrespective of the timing of detention, the relevant inquiry is the identity of the custodian and whether the court has authority over him in that capacity. In Duchow, the American petitioner was subject to pre-trial detention by the Bolivian government and the court denied his habeas petition recognizing that "it is the Bolivian government who has custody over plaintiff and who would be required to produce his body." Duchow at *3. The fact that petitioner was held in pre-trial as opposed to post-conviction

[2] To the extent that statements in Justice Douglas's concurring opinion might be read to suggest that U.S. courts could have jurisdiction if the petitioners were American citizens, such statements do not constitute the holding of the opinion. See United State v. King, 194 F.R.D. 569, 576 n.7 (E.D. Va. 2000) (explaining that a concurring opinion "explicitly agrees with both the legal rule and the outcome announced by the lead opinion and simply expands upon that analysis in a separate opinion.").

[3] Statements in the media or otherwise cited by petitioners to the effect that Mr. Omar is in "U.S. custody" merely mean that he is in custody of the United States contingent of the MNF-I. Such statements do not mean that Mr. Omar is in United States custody qua United States. Uncontroverted evidence shows that Mr. Omar is in the custody of MNF-I. See Declaration of Major General John D. Gardner ¶ 3 (attached as Exhibit 1 to Respondents' Opposition).

detention was of no moment to the Court.[4]

In addition, Judge Bates's decisions in Abu Ali v. Ashcroft, 350 F. Supp. 2d 28 (D.D.C. 2004), and Abu Ali v. Gonzales, 387 F. Supp. 2d 16 (D.D.C. 2005), do not suggest that this Court should exercise habeas jurisdiction in the present case. Instead, at bottom they support respondents' position that this Court should not exercise habeas jurisdiction. In Abu Ali, the Court never found that it had habeas jurisdiction. Abu Ali v. Gonzales, 387 F. Supp. 2d at 19 n.2 (D.D.C. 2005) (stating that "this Court has not determined whether it ever had habeas jurisdiction in this matter"). It merely found initially that the United States could have constructive custody over a person held by a foreign sovereign. Abu Ali v. Ashcroft, 350 F. Supp. 2d 28, 41 (D.D.C. 2004). Such a theory, however, is clearly inapplicable in Mr. Omar's case. Because the United States is not asking another country to detain Mr. Omar on its behalf, it does not have constructive custody of Mr. Omar. Ultimately, and importantly, without ever finding that it had habeas jurisdiction, the court in Abu Ali dismissed the habeas petition as moot after the petitioner was brought to the United States for prosecution in another U.S. jurisdiction. Abu Ali v. Gonzales, 387 F. Supp. 2d at 17 (D.D.C. 2005). Indeed, the rationale for not

---

[4] While the Court in Hirota discussed the nature of the tribunal sentencing the petitioners, the mere fact that they had been convicted and sentenced by a tribunal did not contribute to the rationale for the Court's rejection of their habeas petitions. Instead, the Court focused on the fact that even though the tribunal was established by an American general, he did so as an agent of the Allied Powers, and therefore, the tribunal was not a United States tribunal whose judgments could be reviewed by United States courts. See Hirota at 198. Even Justice Douglas in his concurring opinion noted that "there can be no serious doubt that, though the arrangement is in many respects amorphous and though the tribunal is dominated by American influence it is nonetheless international in character." Id. at 207. The Court's analysis is directly applicable to the custodial situation of Mr. Omar. Even though members of the United States military are involved in the detention of Mr. Omar, they detain him in their capacity as participants in the MNF-I.

exercising habeas jurisdiction in the case of Abu Ali supports respondents' argument here that the Court should not exercise habeas jurisdiction in the case of Mr. Omar. The Abu Ali Court explained that the petitioner was "beyond the reach of [the] Court's habeas jurisdiction" because he was in "pre-trial custody based on federal criminal charges in another federal district." Id. at 19. Because Mr. Omar is pending an investigative hearing under a foreign country's criminal justice system, this Court similarly should decline to exercise habeas jurisdiction.

## II. Petitioners' Request For Jurisdictional Discovery Should Be Denied.

Petitioner's additional request for jurisdictional discovery should be denied. It is well settled that "[a] habeas petitioner, unlike the usual civil litigant in federal court, is not entitled to discovery as a matter of ordinary course," and that "the 'broad discovery provisions' of the Federal Rules of Civil Procedure [do] not apply in habeas proceedings." Bracy v. Gramley, 520 U.S. 899, 904 (1997) (quoting Harris v. Nelson, 394 U.S. 286, 295 (1969)). As the Supreme Court noted in Harris, "[s]uch a broad-ranging preliminary inquiry is neither necessary nor appropriate in the context of a habeas corpus proceeding." 394 U.S. at 297. In particular, the Supreme Court has observed that ordinary discovery procedures tend to be "be exceedingly burdensome and vexatious" in the habeas corpus setting. Id. at 297. Of course, the governmental interests in avoiding such burdens are many times magnified here, where the burdens and intrusions that are "vastly increased" by discovery would fall on servicemembers and commanders carrying out the United States Armed Forces' constitutionally entrusted function of providing for the national defense, as part of their role in MNF-I. It cannot be seriously argued that what the Supreme Court called a "considerable tactical advantage" in litigation and accordingly denied except in narrow circumstances to domestic habeas litigants should be

conferred on members of terrorist organizations with whom the Nation is at war. See Hamdi v. Rumsfeld, 542 U.S. 507, 538-39 (2004) (plurality opinion) (adjuring lower courts generally to "proceed with the caution that is necessary" and to take only "prudent and incremental" steps when faced with novel issues pertaining to petitions for writs of habeas corpus from detainees involved in the current war on terror).

Where, as here, the Court lacks jurisdiction to hear petitioners' claim and, in the words of Hirota, "ha[s] no power" to grant the relief requested, Hirota, 338 U.S. at 198, there is no set of facts that could entitle petitioners to relief. Indeed, any jurisdictional discovery in this case would be fruitless.[5] Respondents note that United States Armed Forces participate in detaining Mr. Omar, but the critical point is that they do so as part of their role and assigned duties in MNF-I, and not qua the United States.[6] Thus, any discovery into the extent to which members of the United States Armed Forces – as opposed to the forces of coalition partners – exercise control over Mr. Omar would be pointless. The jurisdictional issue addressed here turns on the

[5] For these reasons, the discovery situation in Abu Ali is distinguishable from the present case. In Abu Ali, the petitioner alleged his detention was at the behest and ongoing direction of United States officials, while the government disputed that the United States was involved in his detention. 350 F. Supp. 2d at 67. Thus, the Court concluded that discovery was appropriate to determine whether petitioner's allegations were true. Id. at 69. Here, by contrast, respondents note that members of the United States Armed Forces participate in the detention of Mr. Omar, but this fact is not material to the jurisdictional question before the Court because these forces do so as part of their role in MNF-I, which has been authorized by the United Nations Security Council to take all necessary steps to contribute to the maintenance of stability and security in Iraq. See United Nations Resolution 1546 ¶¶ 9-11.

[6] For this reason, petitioners' suggestion that the degree to which the United States Armed Forces participate in MNF-I vis-a-vis other coalition nations is not material. The salient fact is that action taken by United States Armed Forces in this regard is taken as part of its role in MNF-I.

fact that Mr. Omar is in the custody of MNF-I[7] and no amount of discovery can change or alter this fact.[8]

**III. The Petition Lacks An Appropriate Legal And Factual Basis.**

Even if the Court somehow concludes that the United States has custody of Mr. Omar, separation of powers principles foreclose the exercise of jurisdiction here. See Respondents' Opposition at 21-27. Such intervention would intrude upon the Executive's prerogative to manage foreign and military affairs in the context of an ongoing war involving a multinational force. Moreover, the Court should refrain from exercising jurisdiction based on international comity considerations. See id. at 20-27. Respondents are aware of no court that has ever intervened in a situation in which a foreign country intends to try someone for violations of that country's sovereign laws committed within its own territory.

Furthermore, even if the Court somehow were to decide to exercise jurisdiction, the writ of habeas corpus should not issue and petitioners requested relief should not be granted. Respondents have previously submitted materials that adequately demonstrate the factual and legal basis for Mr. Omar's detention.[9] See generally Gardner Decl. (describing, inter alia, Mr.

---

[7] The jurisdictional issue in this case also turns on separation of powers principles as set forth more fully in Respondents' Opposition at 21-27. But, of course, the separation of powers considerations do not require discovery.

[8] While discovery is neither appropriate nor necessary to address the jurisdictional issue before the Court, respondents do not concede that discovery would be appropriate in the event the Court determines that it does have jurisdiction over this case. The Court need not reach that issue, however, until after it has passed on the jurisdictional issues addressed above. Respondents request that the question whether any factual development is needed, and if so, how it should be conducted, be addressed at a later date, if ever.

[9] Notably, petitioners have not disputed these assertions.

Omar's involvement in terrorist activities).[10]

**CONCLUSION**

Petitioners' request for judicial intervention in this situation is extraordinary. For the reasons stated above, as well as in respondents' prior submission, respondents respectfully submit that the writ of habeas corpus should not issue and that the requested relief should be denied.

[10] Because consideration of any additional legal and factual issues beyond the jurisdictional question presented by the Petition would be premature at this point, respondents reserve the right to submit additional factual and legal materials in opposition to petitioners' requested relief, if necessary.

Dated: February 9, 2006

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

KENNETH L. WAINSTEIN
United States Attorney

/s/ Edward H. White & Andrew I. Warden
JOSEPH H. HUNT (D.C. Bar No. 431134)
VINCENT M. GARVEY (D.C. Bar No. 127191)
EDWARD H. WHITE (D.C. Bar No. 468531)
ANDREW I. WARDEN (IN Bar No. 23840-49)
Attorneys
U.S. Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Avenue, N.W. Room 6110
Washington, D.C. 20530
Tel: (202) 514-5108
Fax: (202) 318-4268
email: ned.white@usdoj.gov

Attorneys for Respondents