IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SANDRA K. OMAR, *et. al.*, <br>        Petitioners, <br><br> v. <br><br> FRANCIS J. HARVEY, *et. al.*, <br>        Respondents. | CIVIL ACTION NO. 05-2374 (RMU) |

**EMERGENCY RENEWED REQUEST FOR ACCESS AND
MOTION FOR RECORDS**

Undersigned counsel recently learned that Shawqi Omar was beaten and subjected to electric shocks during his confinement. Mr. Omar's body was photographed shortly after being subjected to this abuse. Counsel therefore renew on an emergency basis their request for immediate, in-person access to Mr. Omar. Counsel further move the Court to order Respondents to produce Mr. Omar's medical records and all photographs of Mr. Omar's body. Such an order is squarely permitted by 28 U.S.C. §§2241, 2243, 2246, the Fifth and Eighth Amendments to the United States Constitution, and Rules 6(a) of the Rules Governing §2254 Cases.

**INTRODUCTION**

The United States government is holding Shawqi Omar, an American citizen, in a U.S. prison facility in Iraq. Since his arrest October 29, 2004, he has been held without charge and without access to counsel. The government maintains that this condition may continue indefinitely, and that it may ignore Mr. Omar's constitutional rights, including his right to

counsel, with impunity. *See, e.g., Respondent's Opposition to Petitioners' Memorandum and Proposed Order Concerning Conference and Discovery Order at 2-4.*

On April 13, 2006, one of the counsel for Petitioners, Susan L. Burke, received an unexpected telephone call from Mr. Omar. *See Exhibit A, Declaration of Susan L. Burke, at ¶ 3.* The telephone call was limited to fifteen minutes and was constantly monitored by Staff Sgt. Obiaooro. *Id.* at ¶ 4.

During the call, Mr. Omar reported that Americans claiming to be agents with the Federal Bureau of Investigation beat him severely and applied electric shocks to his body.[1] *Id.* at ¶ 6.[2] Mr. Omar protested that he was an American citizen, and asked for a lawyer. *Id.* In response, the American agents told Mr. Omar they believed his passport was fake and that they could kill him if they wanted. *Id.* The American agents also threatened to rape Mr. Omar's son. *Id.* A translator whom Mr. Omar believed was Moroccan threatened to rape Mr. Omar's wife, who was in U.S. custody at the time.[3] *Id.*

---

[1] In August 2003, army intelligence officials developed a "wish list" of interrogation techniques to be used in Iraq, which included the use of "low voltage electrocution." *See* Alternative Interrogation Techniques (Wish List), 4th Infantry Division, ICE, Bates Nos. DOD002854-DOD002856, attached as Exhibit B (available at http://www.aclu.org/torturefoia/released/041905/6570_6668.pdf ); *see also* Sworn Statements from CID interviews, produced for ACLU FOIA litigation, attached as Exhibit C, Bates DOD000860 ("One reported being electrocuted by an Egyptian interpreter who was working for a civilian agency."); Bates DODDOACID-005096 ("During the interrogation, Mr. [redacted] was beaten with wooden sticks, punched, electrocuted, forcibly sodomized, and made to drink urine."); Bates DODDOACID-004951 (reporting detainee "describing being slapped in the right cheek and shocked with a 'tazer' on his right arm"); Bates DODDOACID-004954-004956 (detainee statement saying that an American soldier "hit me with the electric gun twice in my arm with two wire needles, and they took me to the doctor who picked up the two wire needles from my arm" and agent report determining that photograph of injuries were consistent with tazer burns).

[2] It is of course possible these were military interrogators posing as FBI agents, as was true at the Guantánamo Bay Navel Base prison facility. *See, e.g.,* E-mail from [redacted] to Gary Bald, et al. Re: Fwd: Impersonating FBI at GTMO (Dec. 5, 2003 9:53 a.m.), attached as Exhibit D (also available at http://www.aclu.org/torturefoia/released/122004.html). The American agents showed Mr. Omar their badges. He could not read them, however, because his eyes were swollen from the beatings. *See Burke Decl.* at ¶ 7. One agent was a blonde man. The other was approximately six feet tall with a small beard and claimed to have sixteen years experience. *Id.*

[3] Threats to family members are well-documented at a number of U.S.-run detention facilities. *See, e.g.,* Army Regulation 15-6, Final Report: Investigation into FBI Allegations of Detainee Abuse at Guantánamo Bay,

Three military officials, known to Mr. Omar only as Corporal Cohen, Sgt. Major Adams and Sgt. First Class Stewart, photographed Mr. Omar's body shortly after he had been beaten and subjected to electrical shocks. *Id.* at ¶ 8. Mr. Omar heard these men discussing whether the photographs should be stored on a floppy disk or computer. *Id.* Later, Mr. Omar was examined by a military physician with the rank of lieutenant colonel, whose name is unknown to Mr. Omar. This officer informed him that burn marks on his body were the result of being subjected to electric shocks. *Id.* ¶ 9.

## ARGUMENT

Undersigned counsel are justifiably concerned about Mr. Omar's physical and mental well-being. He has been held without charge and without access to counsel for more than eighteen months. Relatives report that Mr. Omar has hypertension and high blood pressure, suffers knee pain, and has lost a significant amount of weight while in prison. *See Decl. of Sandra K. Omar, ex. 1 to Petition for Writ of Habeas Corpus, at ¶ 29.* Now, however, we learn in addition that Mr. Omar has been beaten and subjected to electric shocks.

### I.   RESPONDENT SHOULD BE ORDERED TO PROVIDE COUNSEL WITH IMMEDIATE IN-PERSON ACCESS TO THEIR CLIENT.

Mr. Omar has provided compelling evidence of mistreatment during his confinement in U.S. custody. Mr. Omar has begged his captors to allow him to meet with a lawyer almost from the moment of his arrest eighteen months ago. Without immediate and in-person access to counsel, Mr. Omar's access to this Court is meaningless. The Supreme Court has held that prisoner access to the courts must be "adequate, effective, and meaningful." *Bounds v. Smith*,

---

Cuba Detention Facility (Apr. 1, 2005, amended June 9, 2005) ("Schmidt Report") at 24-26 (finding that a military interrogator threatened the detainee and his family), attached as Exhibit E (also available at http://www.defenselink.mil/news/Jul2005/d20050714report.pdf); Sworn Statement from CID interview, produced for ACLU FOIA litigation, attached as Exhibit F, Bates DOD-DOACID001257 ("At the end they threatened me that they would bring my wife and my mother and that they would rape them if I did not confess.").

430 U.S. 817, 821-22 (1977); *see also Al-Joudi v. Bush,* 406 F. Supp. 2d 13, 22 (D.D.C. 2005) (J. Kessler) (citing *Bounds* for these underlying principles in the context of a habeas action of a non-citizen detainee held at Guantánamo Bay to allow in-person access to counsel).  Access to counsel is essential to secure Mr. Omar's right to "present the facts surrounding [his] confinement to the Court."  *Al Odah v. United* States, 346 F. Supp. 2d 1, 6 (D.D.C. 2004).  The government has leveled serious accusations against Mr. Omar.  Without access to counsel, it is simply impossible for Mr. Omar to defend himself against these allegations.

Respondents have no valid reason to continue denying Mr. Omar access to counsel.  Federal courts routinely order attorney access to non-American-citizen clients who are being held at Guantánamo Bay, Cuba.  *See, e.g., Adem v. Bush,* ___F. Supp. 2d ____, 2006 WL 751309, at *7 (D.D.C. 2006) (M.J. Kay) (noting that the protective order and procedures for counsel visits to Guantánamo first ordered by Senior Judge Joyce Hens Green in November 2004 in *In re Guantanamo Detainee Cases,* 344 F.Supp.2d 174 (D.D.C. 2004), "have since been entered in the vast majority of Guantánamo *habeas* cases currently pending in the District Court."); *see also Al-Joudi*, 406 F. Supp. 2d at 22 ("In these circumstances in particular, access to the Court means nothing without access to counsel."); *Al-Shabany v. Bush*, No. 05-CV-2029, 2005 WL 3211407 (D.D.C. Nov. 17 2005) (J. Bates) (entering the protective order providing for in-person and unmonitored access to counsel); *Al-Joudi v. Bush*, No. 05-CV-301 (Sept. 16, 2005) (J. Robertson) (same); *Batarfi v. Bush*, No. 05-CV-409 (May 19, 2005) (J. Sullivan) (same); *Al-Anazi v. Bush*, No. 05-CV-345 (Apr. 21, 2005) (J. Bates) (same); *Al-Wazan v. Bush*, No. 05-CV-329 (March 23, 2005) (J. Friedman) (same).

Respondents, moreover, can honor Mr. Omar's right to immediate in-person access to counsel in myriad ways.  Respondents could permit counsel to meet with Mr. Omar at Camp

Bucca, near Kuwait.  Respondents could also make Mr. Omar available at any United States military installation, either in the United States, the Middle East, or Europe.  In short, there is no reason why Respondents should continue to refuse to grant undersigned counsel access to their American client.  And, it is "clear that the Court is authorized to craft the procedures necessary to make this possible, in order that [it] might fully consider [Mr. Omar's] challenge to [his] detention."  *Al Odah*, 346 F. Supp. 2d at 6.

II.     **RESPONDENTS SHOULD BE ORDERED TO PRODUCE MR. OMAR'S MEDICAL RECORDS AND THE PHOTOGRAPHS OF HIS CONDITION TAKEN AFTER THE BEATINGS AND ELECTRIC SHOCKS**.

Respondents should be ordered to release immediately to counsel Mr. Omar's medical records and the photographs taken of him after the beatings and electric shocks.

This Court unquestionably has the power to order such productions in the context of a habeas proceeding.  "Where specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is . . . entitled to relief, it is the duty of the court to provide the necessary facilities and procedures for an adequate inquiry."  *Bracy v. Gramley*, 520 U.S. 899, 908-09 (1997) (ellipsis in original; *quoting Harris v. Nelson*, 394 U.S. 286, 300 (1969)); *see also Harris,* 394 U.S. at 289 (discovery appropriate to demonstrate that convicted prisoner's search and arrest had been based on an unreliable informant); *Banks v. Dretke*, 540 U.S. 668, 684-85 (2004) (discovery ordered by district courton habeas yielded exculpatory evidence).  Once the petitioner establishes good cause, the Court should grant the necessary discovery "to fully develop the facts of a claim."  *Teague v. Scott*, 60 F.3d 1167, 1172 (5th Cir. 1995); *East v. Scott*, 55 F.3d 996, 1001-02 (5th Cir. 1995) (when facial allegations are "facially sufficient to establish a due process claim," petitioner is entitled to discovery "to fully develop the facts.").  Indeed, a blanket denial of discovery is an abuse of

discretion whenever discovery is "indispensable to a fair, rounded, development of the material facts." *Toney v. Gammon*, 79 F.3d 693, 700 (8th Cir. 1996); *East v. Scott*, 55 F.3d 996, 1001-02 (5th Cir. 1995) (same).

Courts routinely order Respondents to produce information in their custody or control. *See, e.g., Rice v. Clark*, 923 F.2d 117, 118-19 (8th Cir. 1991) (noting district court order granting discovery of FBI records); *McKenzie v. Risley*, 915 F.2d 1396, 1398 (9th Cir. 1990) (remand for discovery of *ex parte* communications between prosecutor and judge); *Payne v. Bell*, 89 F. Supp. 2d 967, 970, 971-76 (W.D. Tenn. 2000) (granting request for discovery of documents in state's possession and to depose assistant district attorney); *United States ex rel. Pecoraro v. Page*, No. 97 C 5361, 1998 U.S. Dist. LEXIS 15746 at *21 (N.D. Ill. Sept. 30, 1998) (granting request to depose trial counsel, two prosecutors, and two detectives); *United States ex rel. Brisbon v. Gilmore*, No. 95 C 5033, 1997 U.S. Dist. LEXIS 8314 at *8 -*9 (N.D. Ill. June 10, 1997) (granting request for discovery of inmate prison and parole records). If discovery is appropriate in post-conviction proceedings, it is certainly appropriate – indeed, required – here, where Mr. Omar has been detained by the Executive for eighteen months without any judicial process whatsoever.

Not surprisingly, courts often order Respondents to produce a habeas petitioner's medical records pertaining to a petitioner. *See, e.g., Sherman v. McDaniel*, 333 F. Supp. 2d 960, 970-71 (D. Nev. 2004) (ordering discovery of petitioner's medical records in custody of state and municipal health providers); *Cowans v. Bagley*, No. C-1-00-618, 2002 U.S. Dist. LEXIS 21884 at *41–*46 (S.D. Ohio Sep 30, 2002) (ordering disclosure of "[a]ny and all psychological or medical records related to petitioner**,** in the possession of the state, the Ohio Department of Rehabilitation and Correction and/or the Ohio Adult Parole Authority, including mental health

records"); *see also United States ex rel. Kennedy v. Page*, No. 99 C 6067, 1999 U.S. Dist. LEXIS 17905 at *7-*8 (N.D. Ill. Nov 16, 1999) (in lieu of ordering formal discovery, court directs Respondent and Illinois Department of Corrections to provide petitioner with his medical records to facilitate development of claim); *United States ex rel. Madej v. Gilmore*, No. 98 C 1866, 1999 U.S. Dist. LEXIS 4086 at *9 (N.D. Ill. March 24, 1999) (though granting habeas petitioner other discovery, court declines to grant discovery to obtain medical records because "the petitioner's own medical records are already available to the petitioner."). Indeed, courts in this District grant similar requests for non-citizen detainees held at the U.S. Naval Base at Guantanamo Bay, Cuba. For example, Judge Kessler recently ordered the United States government to produce the medical records of prisoners at Guantánamo who were being force-fed by military personnel. *See Al-Joudi*, 406 F. Supp. 2d at 13.

Mr. Omar's medical records, as well as photographs of his condition immediately after the beatings and electric shocks, are undoubtedly relevant to the lawfulness of his continued detention. For instance, if the Government relies on statements purportedly made by Mr. Omar—a fact which cannot be ascertained with precision because the Government has so far refused to disclose the basis for its inflammatory allegations—the Court and counsel need to know whether and to what extent these statements were literally burned from Mr. Omar against his will. This Court should, accordingly, order Respondents to produce these records without delay.[4]

---

[4] On April 14, 2006, the Respondents appealed the preliminary injunction entered by this Court sixty days earlier preventing the Government from removing Mr. Omar to Iraqi custody. It is axiomatic that the appeal of a preliminary injunction does not diminish this Court's power to proceed with the litigation. *See*, e.g., Act of March 3, 1891, 26 Stat. 826 § 7 (declaring that "proceedings in other respects in the court below shall not be stayed unless otherwise ordered by that court during the pendency of the appeal"); *Soc'y for Animal Rights, Inc. v. Schlesinger*, 512 F.2d 915, 918 (D.C. Cir. 1975); *see also Webb v. GAF Corp.*, 78 F.3d 53, 55 (2d Cir. 1996) ("Although the filing of a notice of appeal ordinarily divests the district court of jurisdiction over issues decided in the order being appealed, jurisdiction is retained where, as here, the appeal is from an order granting or denying a preliminary injunction."); *Railway Labor Executives' Ass'n v. Galveston*, 898 F.2d 481, 481 (5th Cir. 1990); *West Pub. Co. v.*

## CONCLUSION

Respondents should be ordered to grant undersigned counsel immediate in-person access to their client. Such access is required by law and necessary to make access to this Court meaningful. Respondents should also be ordered to produce Mr. Omar's medical records and the photographs of his condition after the beatings and electric shocks. Such records bear directly on the lawfulness of his detention.

Dated: April 20, 2006                    Respectfully submitted,


/s/ Susan L. Burke
Susan L. Burke (D.C. Bar # 414939)
Heather L. Allred (admitted *pro hac vice*)
BURKE PYLE LLC
3527 Lancaster Avenue
Philadelphia, PA 19104
Telephone:    (215) 387-4705
Facsimile:     (215) 387-4713

Joseph Margulies (admitted *pro hac vice*)
MACARTHUR JUSTICE CENTER,
UNIVERSITY OF CHICAGO LAW SCHOOL
1111 East 60th Street
Chicago, IL  60637
Telephone:    (773) 702-9560
Facsimile:     (773) 702-0771

Aziz Z. Huq (admitted *pro hac vice*)
Jonathan Hafetz (admitted *pro hac vice*)
BRENNAN CENTER FOR JUSTICE, NEW
YORK UNIVERSITY LAW SCHOOL

---

*Mead Data Cent., Inc.*, 799 F.2d 1219, 1229 (8th Cir. 1986); *United States v. Price*, 688 F.2d 204, 215 (3d Cir. 1982); *Berne Corp. v. Government of the Virgin Islands*, 2000 WL 1689787, at *1 (D.V.I. 2000) ("It is well-established that 'an interlocutory injunction appeal . . . does not defeat the power of the trial court to proceed further with the case'"); 16 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 3921.2 (3d ed. 2005) (noting that it is "accepted that the district court retains power to act on the case pending appeal."). A magistrate in this District recently enforced the protective order allowing counsel access to detainees at Guantánamo even though the case was stayed pending resolution in the Circuit and Supreme Courts. *Adem v. Bush*, ___F. Supp. 2d ____,2006 WL 751309, at *8 (D.D.C. 2006) (J. Kay).

        161 Avenue of the Americas, 12th Floor
        New York, NY  10013
        Telephone:   (212) 998-6730
        Facsimile:    (212) 995-4550

*Counsel for Petitioners*

## CERTIFICATE OF SERVICE

I, Heather L. Allred, hereby certify that on April 21, 2006, I caused to be served a true and correct copy of the foregoing Emergency Request for Access and Motion for Records via electronic mail and U.S. First Class Mail, postage prepaid, upon the following individual at the address indicated:

Edward H. White, Esq.
U.S. Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Avenue, N.W., Room 6110
Washington, D.C. 20530

ned.white@usdoj.gov

_____
Heather L. Allred

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| SANDRA K. OMAR, *et. al.*,  )<br>　　　　Petitioners,  )<br>　　　　　　　　　　　　)<br>v.　　　　　　　　　　　)<br>　　　　　　　　　　　　)<br>FRANCIS J. HARVEY, *et. al.*,  )<br>　　　　Respondents.  )<br>　　　　　　　　　　　　) | CIVIL ACTION NO. 05-2374 (RMU) |

**EXHIBIT LIST**

**A**　　Declaration of Susan L. Burke

**B**　　Alternative Interrogation Techniques (Wish List), 4th Infantry Division, ICE, Bates Nos. DOD002854-DOD002856

**C**　　Sworn Statements from CID interviews, produced for ACLU FOIA litigation, Bates DOD000860, Bates DODDOACID-005096, Bates DODDOACID-004951, Bates DODDOACID-004954-004956.

**D**　　E-mail from [redacted] to Gary Bald, et al. Re: Fwd: Impersonating FBI at GTMO (Dec. 5, 2003 9:53 a.m.)

**E**　　Army Regulation 15-6, Final Report: Investigation into FBI Allegations of Detainee Abuse at Guantánamo Bay, Cuba Detention Facility (Apr. 1, 2005, amended June 9, 2005) ("Schmidt Report")

**F**　　Sworn Statement from CID interview, produced for ACLU FOIA litigation, Bates DOD-DOACID001257