IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SANDRA K. OMAR, *et. al.*, ) | |
| Petitioners, ) | CIVIL ACTION NO. 05-2374 (RMU) |
| ) | |
| v. ) | |
| ) | |
| FRANCIS J. HARVEY, *et. al.*, ) | |
| Respondents. ) | |

## DECLARATION OF SUSAN L. BURKE

I declare under penalty of perjury that the following is true and correct:

1. My name is Susan L. Burke. I have been a member of the bar of the District of Columbia since 1987. I practiced with Covington & Burling for fourteen years. I also served as a Trial Attorney in Civil Frauds, Department of Justice. I now have my own firm, Burke Pyle LLC, which, along with the McArthur Justice Center at the University of Chicago Law School and the Brennan Center for Justice at the New York University School of Law, serves as attorney of record for Shawqi Omar and next friends Sandra K. Omar and Ahmed S. Omar.

2. The United States government has held Shawqi Omar, an American citizen, in prison for more than eighteen months. The United States government has taken the position that it is free to violate Mr. Omar's constitutional rights, including his right to counsel. *See, e.g., Respondent's Opposition to Petitioners' Memorandum and Proposed Order Concerning Conference and Discovery Order at 2-4 .*

3. During the afternoon of April 13, 2006, I received – without any advance notice – a telephone call from our client Shawqi Omar.

4. Mr. Omar's call to me was limited to fifteen minutes and was constantly monitored by Staff Sgt. Obiaooro, who audibly provided the spelling of his name upon my request.

5. The following sets forth the information I believe was provided by Mr. Omar during the telephone call based on my contemporaneous notes. Although I have striven to be as accurate as possible, Mr. Omar spoke quite rapidly during the call, and I may have misunderstood certain remarks. Given that the call was monitored and likely recorded, there should be a tape recording available to the United States that may be used to confirm the accuracy of my records.

6. Mr. Omar reported that, upon his arrest on October 29, 2004, Americans claiming to be Federal Bureau of Investigation agents beat him severely and applied electric shocks to his body. Mr. Omar told the agents he was an American citizen, and asked for a lawyer. In response, the American agents stated his passport was fake. The American agents claimed that they could kill him if they wanted to do so. The American agents threatened to rape his son if Mr. Omar failed to provide information. A translator believed by Mr. Omar to be Moroccan threatened to rape Mr. Omar's wife, who was also in United States military custody at that time.

7. Mr. Omar reported that the American agents showed him badges but he could not read the names on the badges because his eyes were swollen from the beatings. One agent was blonde man. The other agent was approximately six feet tall with a small beard. That agent claimed he had sixteen years experience.

8. Mr. Omar reported that Corporal Cohen, Sgt. Major Adams and Sgt. First Class Stewart photographed his body shortly after he had been beaten and subjected to electrical shocks. Mr. Omar heard – immediately before he fainted from the beatings and shocks – the aforementioned military personnel discussing whether the photographs that they had just taken of him should be stored on a floppy disk or computer.

9. Mr. Omar reported that a military physician with the rank of lieutenant colonel examined him and informed him that the burn marks on his body were the result of being subjected to electric shocks. Mr. Omar does not know the name of that physician.

10. On or about August 4, 2005, ten months after his arrest, Mr. Omar was interviewed for approximately five hours by agents from the Army Criminal Investigative Division. Although Mr. Omar asked for the names of the agents, they refused to provide their names.

11. On a separate occasion, in response to Mr. Omar's repeated entreaties for counsel and for release, a person thought by Mr. Omar to be a Defense Department investigator named "Adam" told Mr. Omar that he could not be released because his imprisonment was being "hidden."

12. Mr. Omar has had conversations with another prisoner who informed him that he too was a United States citizen who had been imprisoned without charge and without access to counsel . This prisoner's number is 20019. I gave Mr. Omar permission to give my name and telephone number to this prisoner.

Date: April 21, 2006

_____
Susan L. Burke

- 4 -