# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SANDRA K. OMAR, et al. ) | |
| ) | |
| Petitioners, ) | |
| ) | |
| v. ) | CIVIL ACTION No. 05-2374 (RMU) |
| ) | |
| FRANCIS J. HARVEY, et al., ) | |
| ) | |
| Respondents. ) | |

## DECLARATION OF MARK W. SEITSINGER

I, Colonel Mark W. Seitsinger, pursuant to 28 U.S.C. § 1746, hereby declare and say as follows:

I currently serve as Senior Legal Advisor for Task Force 134, Detainee Operations, Multi-National Force – Iraq (MNF-I). I make these statements based upon my personal knowledge and upon information made available to me in the performance of my official duties.

1. The mission of Task Force 134 involves maintaining custody and control of detainees in a safe and humane manner. Consistent with that mission, we do not permit the mistreatment or abuse of detainees. We have standard operating procedures and training programs to ensure that detainees are treated appropriately and that alleged violations of our procedures are investigated.

2. Mr. Omar alleges that, upon his arrest on October 29, 2004, Americans claiming to be Federal Bureau of Investigation agents beat him severely and applied electric shocks to his body. Contrary to Mr. Omar's allegations, no FBI agents have physically abused Mr. Omar in any manner or applied electric shocks to his body. Furthermore, no government personnel or other contracted personnel have physically beaten or used electric shock on Mr. Omar.

3. Mr. Omar alleges that American agents claimed they could kill him if they wanted to, that American agents threatened to rape his son, and that a translator threatened to rape his wife. Contrary to Mr. Omar's allegations, no FBI agents, or other government personnel, or other contracted personnel have told Mr. Omar that they could kill him if they wanted to or have threatened to rape his son or his wife.

4. Any injuries that Mr. Omar has or did have would have pre-dated his arrest or would have occurred during the course of his apprehension more than a year and a half ago in October 2004. At the time of the raid on his home in Baghdad, Mr. Omar was captured harboring an Iraqi insurgent and four Jordanian foreign fighters, and he had several weapons and Improvised Explosive Device (IED) making materials in his home. The capturing unit used sufficient and appropriate force to tackle Mr. Omar to the floor when he resisted capture and attempted to fire a weapon at them. Mr. Omar received medical treatment for any injuries he had at the time he was captured.

5. Any allegations by Mr. Omar of abuse and mistreatment have been investigated and determined to be unfounded.

I declare under penalty of perjury that the foregoing is true and correct. Executed on the 5th Day of May 2006.

MARK W. SEITSINGER
Colonel, US Army
Legal Advisor