IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| SANDRA K. OMAR, *et al.*, | ) ) ) | |
| Petitioners, | ) ) | |
| v. | ) ) | Civil Action No. 05-2374 (RMU) |
| PETER GEREN, *et al.*, | ) ) ) | |
| Respondents. | ) ) ) | |

**RESPONDENTS' OPPOSITION TO PETITIONER'S MOTION
FOR IMMEDIATE DISCHARGE**

Petitioner – a Jordanian and American citizen who was arrested in Iraq and is being held there by the Multi-National Force-Iraq ("MNF-I") as an enemy combatant and a security internee – filed a Motion for Immediate Discharge with this Court on July 26, 2007. That motion, which erroneously alleges the Government failed to satisfy an Order to Show Cause issued by this Court in January 2006, is nothing more than a thinly-veiled attempt to prompt this Court to rule now on petitioner's already-pending motion for a new Order to Show Cause, and should be summarily denied.

Rather than issue a ruling on the merits of the petition without seeking further input from the Government, as petitioner suggests, this Court should instead maintain the status quo, deferring all further district court proceedings until the Solicitor General makes a determination on whether to file a petition for a writ of certiorari with the Supreme Court, and/or until the Supreme Court decides whether to grant the petition for a writ of certiorari already filed in *Munaf v. Geren*, 482 F.3d 582 (D.C. Cir. 2007) – a similar case presenting the question of whether federal courts have jurisdiction over habeas petitions filed by individuals detained abroad pursuant to international authority (the

petitioner in that case, like Omar, is detained in Iraq by the MNF-I). If this Court does not hold all further proceedings in abeyance pending the outcome of the Supreme Court's review of *Munaf* or this litigation (in the event such review is sought), the Government respectfully requests, at a minimum, that it be allowed, pursuant to 28 U.S.C. § 2243, to make additional submissions concerning the justification for petitioner's continued detention.

**ARGUMENT**

**I.      Petitioner's Motion for an Immediate Discharge Should be Summarily Denied**

This Court should summarily deny petitioner's Motion for Immediate Discharge, filed July 26, 2007. That motion erroneously contends that the Government failed to respond to this Court's January 20, 2006 Order when, in fact, the Government responded to that Order on February 9, 2006 by detailing the basis of petitioner's detention and urging that this Court dismiss the petition for lack of jurisdiction. Petitioner contends that this Court should immediately adjudicate the petition, without further briefing from the Government, assuming all of petitioner's allegations to be conceded. Put simply, petitioner argues that the Government's alleged failure to respond to the January 2006 Show Cause Order requires his immediate released from MNF-I custody. This argument is both factually and legally flawed.

Petitioner is simply wrong when he asserts that the Government failed to respond to this Court's January 2006 Show Cause Order. The Government *immediately responded* to that Show Cause Order on January 24, 2006 – just days after this Court entered the Order – by moving for and obtaining a short extension of time to show cause why petitioner's detention in Iraq while he awaits trial before the Central Criminal Court of Iraq ("CCCI") is lawful. Then, on February 9, 2006, the Government filed a response to this Court's Show Cause Order. That response explained why this

Court lacks jurisdiction over the petition *and set forth facts justifying petitioner's continued detention*. Contrary to petitioner's suggestion, the Government did not offer only "one stray and ambiguous sentence" concerning the facts of petitioner's detention, *see* Motion for Immediate Discharge at 2, but, instead, incorporated by reference and referred this Court to the detailed declaration of Major General John D. Gardner, who served as the MNF-I's Deputy Commanding General for Detainee Operations. That declaration, which had been previously submitted along with the Government's opposition to the *ex parte* Motion for a Temporary Restraining Order, set forth relevant facts surrounding petitioner's arrest, detention, and upcoming criminal proceedings in front of the CCCI.[1]

Thus, petitioner's contention that the Government remains under an obligation to respond to a show cause order is factually incorrect; the Government discharged that obligation when it filed

---

[1] Petitioner's only acknowledgment of this Declaration occurs at page 5 of his Motion, where he implicitly characterizes this document as "multiple-hearsay evidence larded with inflammatory accusations." Motion for Immediate Discharge at 5. Even assuming *arguendo* that it contains some hearsay, this attempt to discredit the Gardner Declaration runs directly contrary to the Supreme Court's opinion in *Hamdi*, which specifically contemplated the use of this kind of declaration in citizen enemy-combatant cases:

> [T]he exigencies of the circumstances may demand that . . . enemy-combatant proceedings may be tailored to alleviate their uncommon potential to burden the Executive at a time of ongoing military conflict. *Hearsay, for example, may need to be accepted as the most reliable available evidence from the Government in such a proceeding.*

*Hamdi*, 542 U.S. at 534 (emphasis added). Moreover, to the extent that the information contained in the declaration may be regarded as "inflammatory," it is only because petitioner's own conduct leading to his capture and detention was of such a serious nature (including his ties with officials at the highest levels of al-Qaeda in Iraq, his harboring of illegal insurgents who entered Iraq solely to fight against Coalition forces, and his heading a kidnaping ring in which he planned to use the English skills he acquired as a U.S. citizen to lure Westerners into his home for the purpose of kidnaping and ransoming them).

its Response in February 2006. The Government, therefore, has not waived its substantive defenses to the petition, as petitioner suggests. *See* Motion for Immediate Discharge at 5. If anything, it is *petitioner* who has waived an argument – the argument that the Government's response to the January 2006 Show Cause Order was insufficient. The petitioner never responded to the Government's filing, or otherwise argued that Response failed to satisfy the Court's Order. In fact, petitioner waited a full sixteen and one-half months – from February 9, 2006 until June 20, 2007 – to even *suggest* that the Government's response was insufficient. It was not until petitioner filed a new motion for an order to show cause (styled a "renewed" motion), seeking more factual information from the Government, that he first claimed the Government's original filing was somehow insufficient.[2] Yet petitioner wishes now to use that passage of time in support of his contention that the *Government* proceeded in bad faith by allegedly ignoring this Court's Order for some eighteen months. This Court should not reward such conduct by ordering petitioner's immediate release, as petitioner seeks through this new maneuver.

In addition to being factually misleading, petitioner's argument is also legally flawed because it implies that the Government may not respond to an Order to Show Cause solely with legal arguments demonstrating why the petition should be dismissed. Petitioner points to the Advisory Committee Note accompanying Rule 5 of the Rules Governing Habeas Cases,[3] which provides that

---

[2] Indeed, the very fact that petitioner filed a "renewed" motion for an Order to Show Cause in June 2007 is inconsistent with his contention now that the Government remains under an obligation to respond to the prior Order. If the January 2006 Show Cause Order was still operative, there would be no need for a new (or "renewed") Show Cause Order; petitioner simply could have filed the instant Motion for Immediate Discharge at any time before now and without first "renewing" a motion for an order to show cause.

[3] Although this case arises under 28 U.S.C. § 2241, rather than § 2254 (which governs post-conviction challenges to state sentences), the rules governing § 2254 cases nonetheless apply. *See*

the response to an order to show cause "must respond to the allegations of the petition," and argues that purely *legal* arguments against the petition therefore are insufficient to meet that burden. *See* Motion for Immediate Discharge at 4. This contention lacks merit. The Ninth Circuit has rejected that exact argument, finding that the wording on which petitioner relies "cannot be read as a blanket bar against motions to dismiss without regard to their merit." *White v. Lewis*, 874 F.2d 599, 603 (9th Cir. 1989); *see also Hillhouse v. Warden of San Quentin State Prison*, 2007 WL 1247103, *5 (E.D.Cal. 2007) ("[A]lthough the state has no right, as it would in non-habeas civil litigation, to file a 12(b)(6) motion to dismiss, the Court now has the discretion to allow such a motion where . . . the issues raised by the state are appropriate for summary resolution." (internal quotation marks and citation omitted)). Quite to the contrary, "responding to a habeas petition with a motion to dismiss *is common practice*." *White*, 874 F.2d at 603 (citing *Murray v. Carrier*, 477 U.S. 478, 483 (1986)) (emphasis added).

Petitioner's argument also fails to mention that a different rule governing habeas cases – Rule 4 – permits a court that has issued an order to show cause to accept in return "an answer *or other pleading*," including motions to dismiss. *See White*, 874 F.2d at 602 (quoting rule) (emphasis in original).[4] The Advisory Committee Notes accompanying the 2004 revisions of the Rules Governing

---

*Castillo v. Pratt*, 162 F. Supp. 2d 575, 577 (N.D. Tex. 2001) ("The Supreme Court intended the 2254 Rules to apply to petitions filed under § 2241."); *Ukawabutu v. Morton*, 997 F. Supp. 605, 608 n.2 (D.N.J. 1998) (The 2254 Rules "apply to petitions filed pursuant to 28 U.S.C. § 2241 as well as 28 U.S.C. § 2254."); *Wyant v. Edwards*, 952 F. Supp. 348, 352 (S.D. W.Va. 1997) ("[T]he § 2254 Rules were intended to apply to § 2241 cases . . . ."); *Hudson v. Helman*, 948 F. Supp. 810, 811 (C.D. Ill. 1996) ("Thus, while the instant Petition is brought pursuant to 28 U.S.C. § 2241, not 28 U.S.C. § 2254, and involves a prisoner in federal custody, the Rules Governing Section 2254 Cases may still be applied here.").

[4] It should be noted that this Court never suggested that the Government failed to discharge its duties under the Show Cause Order at the time it considered petitioner's request for a preliminary

§ 2254 Cases noted that "[t]he revised rule [5] does not address the practice in some districts, where the respondent files a pre-answer motion to dismiss the petition. But *revised Rule 4 permits that practice* and reflects the view that if the court does not dismiss the petition, it may require (or permit) the respondent to file a motion." Rules Governing § 2254 Cases Rule 5, Advisory Committee Note 2004 Amendments (emphasis added). Thus, it is clear that even if the Government's response to the petition had been only a legal argument – which it was not in this case – that fact by itself would not render the response improper.

Because petitioner's Motion thus rests on flawed factual and legal premises, this Court should reject his invitation to proceed to an adjudication of the merits of the petition without seeking further submissions from the Government. Petitioner alleges that courts routinely take this path, adjudicating habeas petitions "on the basis of the facts alleged in the petition" when the government fails to offer a timely response. *See* Motion for Immediate Discharge at 5. The precedents he cites in support of that proposition are inapposite to this case, however, because here the Government did, in fact, timely respond to the Show Cause Order. Petitioner simply wishes to argue that the response was insufficient. That is not so, for the reasons noted above. But even if the response were deemed insufficient, petitioner has not cited a single case holding that the court may proceed to consider the merits of a petition, "on the basis of the facts alleged in the petition," without obtaining a factual return from the Government, where the Government responded in good faith to a show cause order. On the contrary, all of the cases petitioner relies on concern situations where the respondent failed

---

injunction, or at any time during the appeal to the D.C. Circuit of the Court's Order enjoining petitioner's transfer.

to respond at all, or responded clearly after the time for responding had elapsed.[5] The Government's behavior in this case – promptly seeking an extension of time to respond, and then timely responding to the petition with both legal and factual arguments concerning the basis of petitioner's detention – is nothing like the conduct described by the court in the cases petitioner cites.

Moreover, in seeking to have the petition adjudicated solely upon the accusations advanced in his petition – and by asserting that all the allegations in his petition must be taken as true, *see* Motion for Immediate Discharge at 5 – petitioner seeks what amounts to a default judgment against the United States. That relief is inappropriate in a § 2241 case. *See Broussard v. Lippman*, 643 F.2d 1131, 1134 (5th Cir.1981); *Bleitner v. Welborn*, 15 F.3d 652, 653 (7th Cir.1994); *Gordon v. Duran*, 895 F.2d 610, 612 (9th Cir.1990); *Aziz v. Leferve*, 830 F.2d 184, 187 (11th Cir.1987); *Bermudez v.*

---

[5] *See, e.g.*, *Stines v. Martin*, 849 F.2d 1323, 1325 (10th Cir. 1988) (district court abused its discretion by entering default judgment when Government filed its response only three weeks after its due date); *Aziz v. Leferve*, 830 F.2d 184, 187 (11th Cir. 1987) (state never responded to show cause order); *Bermudez v. Reid*, 733 F.2d 18, 21-22 (2d Cir. 1984) (reversing entry of default judgment, but finding that court should have held a hearing based on the allegations in the petition because state failed to respond to show cause order for over four months – seeking three untimely extensions – and had displayed a similar pattern of failing to respond to show cause orders in other cases); *United States ex rel Mattox v. Scott*, 507 F.2d 919, 924 (7th Cir. 1974) (government waited over one hundred days to respond to the petition, despite being ordered by the court to respond within twenty days); *Beall v. Cockrell*, 174 F. Supp. 2d 512, 518 (N.D.Tex. 2001) ("Counsel for respondent failed to comply with two court orders requiring her to answer petitioner's application for writ of habeas corpus" and only filed a responsive pleading "after the clerk entered a default" judgment against the Government); *Bennett v. Collins*, 835 F. Supp. 930, 936 (E.D. Tex. 1993) (after making two untimely requests for an extension of time, the Government responded to the petition "almost four months after the response was originally due, and almost three months past the latest date approved by the court").

Other cases cited by petitioner in support of this contention – that, in the event the respondent fails to respond to a show cause order, a court may consider the petition based solely on the facts alleged therein – are entirely inapposite to that argument because the respondent did timely respond to those petitions. *See, e.g.*, *Whitten v. Tomlinson*, 160 U.S. 231, 245-46 (1895) (noting that respondent filed a return to the petition); *Ward v. Wolfenbarger*, 323 F. Supp. 2d 818, 824 (E.D. Mich. 2004) (same); *In re Sears*, 152 F. Supp. 55, 56 (S.D. Cal. 1957) (same).

*Reid*, 733 F.2d 18, 21 (2d Cir. 1984); *Allen v. Perini*, 424 F.2d 134, 138 (6th Cir. 1970); *Beall v. Cockrell*, 174 F. Supp. 2d 512, 517-18 (N.D. Tex. 2001); *Winn v. Page*, 311 F. Supp 691, 693 (W.D. Ok. 1970). In fact, the cases that petitioner relies upon *specifically reject* the notion that he is entitled to release simply because the Government allegedly failed to respond adequately to the Show Cause Order. For example, in *United States ex rel Mattox v. Scott*, the court noted that "the Advisory Committee did not intend to provide for a habeas corpus petitioner's release in the event of a failure to make a timely return, for the burden of default would then fall upon the community at large." *Scott*, 507 F.2d at 924 (citing *Watmuff v. Perini*, 427 F.2d 527, 528 (6th Cir. 1970); *Allen v. Perini*, 424 F.2d 134, 138 (6th Cir. 1970); and 7 Moore's Federal Practice, 2d ed., ¶ 81.05(4) at 81.64-81.65). It would be especially inappropriate in the present case to find that the Government "waived" its defenses to the merits of the petition because it timely responded to the Order, provided information on the factual basis of petitioner's detention, and advanced good-faith jurisdictional arguments concerning complex and rapidly-developing areas of habeas corpus jurisprudence grounded on long-standing Supreme Court precedents.

This Court should therefore deny petitioner's Motion for Immediate Discharge. Instead, for the reasons noted below, this Court should maintain the status quo and defer any further proceedings until (1) the Solicitor General decides whether to seek a writ of certiorari in this case and (2) the Supreme Court decides whether to grant an already-filed petition for certiorari in *Munaf v. Geren*, which presents a similar challenge to a federal court's jurisdiction to entertain habeas petitions brought by individuals detained abroad under international authority.

II. **This Court Should Preserve the Status Quo Until the Supreme Court Decides Whether to Grant the Already-Filed Petition for a Writ of Certiorari in *Munaf v. Geren* and the Solicitor General Decides Whether to Seek a Writ of Certiorari in This Litigation**

Both this case and *Munaf v. Geren* present the threshold question of whether federal courts have jurisdiction over habeas petitions brought by individuals detained abroad under international authority. Both petitioner and the petitioner in *Munaf* are being detained in Iraq by the MNF-I, and in both cases, the Government argued that federal courts therefore lack jurisdiction over these petitions. In this litigation, the Court of Appeals held the Court has jurisdiction over the petition, whereas in *Munaf*, the Court of Appeals agreed with the Government's position and dismissed the petition for lack of jurisdiction based on the fact that Munaf (unlike petitioner) had already been convicted by the CCCI.[6] If the Supreme Court were to address that threshold jurisdictional question in either case, it could obviously affect this Court's jurisdiction over the instant petition or otherwise effect how the petition is to be litigated.

A petition for a writ of certiorari has already been filed in *Munaf*. Absent an extension of time, the Solicitor General has until August 15, 2007 to respond to that petition. In this litigation, the Solicitor General has until August 22, 2007 (absent an extension of time) to make the determination on whether to seek a writ of certiorari. Until that decision is made[7] – and the Court indicates whether it is going to review either case – this court should preserve the status quo of the

---

[6] Assuming jurisdiction, this litigation presents an additional question not present in *Munaf* – whether a court possesses the authority to enjoin the MNF-I from presenting petitioner to the CCCI for an investigative hearing concerning charges of violating, *inter alia*, Iraqi laws.

[7] The Government will apprise this Court as soon as the Solicitor General makes a decision on whether to seek a writ of certiorari. The Government also will advise the Court should a time extension for seeking a writ of certiorari (or for opposing the petition filed in *Munaf*) be sought and obtained.

parties.[8] Moreover, if the Supreme Court grants review in either case, this Court should preserve the status quo until the Supreme Court decides the case on the merits.

This Court possesses broad discretion to "control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. North American Co.*, 299 U.S. 248, 254 (1936). That discretion is appropriately exercised to hold district court proceedings in abeyance pending possible Supreme Court review. Indeed, stays of district court proceedings pending the outcome of petitions for certiorari "are entered quite routinely." *Walker v. Monsanto Co. Pension Plan*, 472 F. Supp. 2d 1053, 1055 (S.D. Ill. 2006) (staying district court proceedings pending outcome of petition for writ of certiorari). Similarly, courts often defer further proceedings pending the resolution of petitions for certiorari filed in similar or related cases. *See, e.g.*, *Tax Analysts & Advocates v. IRS*, 405 F. Supp. 1065, 1067 (D.D.C. 1975) (staying the district court case when a petition for certiorari in a similar case was pending before the Supreme Court); *see also Texas Independent Producers and Royalty Owners Assn. v. EPA*, 410 F.3d 964, 980 (7th Cir. 2005) ("A stay pending the outcome of litigation in another court between the same parties, involving the same or controlling issues is an acceptable means of avoiding unnecessary duplication of judicial machinery." (quoting *Aetna State Bank v. Altheimer*, 430 F.2d 750, 755 (7th Cir.) (overruled on other grounds)).

This case presents especially compelling reasons to preserve the status quo pending a decision by the Solicitor General on whether to seek certiorari, and a decision by the Supreme Court on whether to grant the petition already filed in *Munaf* (as well as a decision regarding any petition

---

[8] While petitioner continues to be detained, the injunction previously entered by this Court continues to prevent the MNF-I from presenting petitioner to the CCCI for further legal proceedings or otherwise turning him over to the Government of Iraq.

that may be filed in this case). This is not an ordinary habeas case where a factual return may be quickly assembled based upon the record of an already-concluded criminal trial. Rather, this is a case where the petitioner, who was seized abroad (in Iraq) in a time of ongoing hostilities and under suspicion of crimes against Iraqi laws, has been referred for an investigative proceeding in front of the CCCI, but has not yet had that proceeding because this Court's injunction prohibits the MNF-I from presenting petitioner to the Government of Iraq for trial in its courts. *See Omar v. Harvey*, 479 F.3d 1, 14 (D.C. Cir. 2007 ("[T]he injunction prohibits the military from presenting Omar to the CCCI for trial."). Hence, in order to litigate this habeas petition, respondent would be required to divert the attention of MNF-I personnel from their critical missions during ongoing hostilities and direct their efforts, instead, toward this case. The Supreme Court has recognized the danger that such habeas proceedings can have upon the military in a time of war. In *Johnson v. Eisentrager*, the court noted that such proceedings

> would hamper the war effort and bring aid and comfort to the enemy. They would diminish the prestige of our commanders, not only with enemies but with wavering neutrals. It would be difficult to devise more effective fettering of a field commander than to allow the very enemies he is ordered to reduce to submission to call him to account in his own civil courts and divert his efforts and attention from the military offensive abroad to the legal defensive at home. Nor is it unlikely that the result of such enemy litigiousness would be a conflict between judicial and military opinion highly comforting to enemies of the United States.

*Johnson v. Eisentrager*, 339 U.S. 763, 779 (1950); *see also Hamdi v. Rumsfeld*, 542 U.S. 507, 533 (2004) (recognizing that enemy-combatant proceedings contain "uncommon potential to burden the Executive at a time of ongoing military conflict"). These substantial burdens counsel heavily in favor of maintaining the status quo until the Supreme Court indicates whether it will consider the jurisdictional question at issue here.

**CONCLUSION**

For all of the foregoing reasons, the Court should deny petitioner's Motion for Immediate Discharge and should, instead, maintain the status quo (deferring any ruling on the pending motion for a new order to show cause [9]) until after the Solicitor General decides whether to seek Supreme Court review in this case, and until after the Supreme Court decides whether to grant certiorari in *Munaf v Geren*, and (if it is sought) this litigation.

If the Court declines to await the Solicitor General or Supreme Court's actions, and is inclined to grant the pending motion for a new order to show cause, the Government respectfully requests that the Court allow it 20 days (which is the full amount of time permitted by 28 U.S.C. § 2243) to respond to any new Show Cause Order. Despite the fact that the Government already has provided information to this Court demonstrating the legality of petitioner's detention in the form of the Gardner Declaration (as noted *supra*), the Government requests the right to present additional submissions to assist the Court in making its determination about the legality of petitioner's continued detention. *See* 28 U.S.C. § 2243 ("The return and all suggestions made against it may be amended, by leave of court, before or after being filed.").

    Respectfully Submitted,

    PETER D. KEISLER
    Assistant Attorney General

    CARL J. NICHOLS
    Deputy Assistant Attorney General

---

[9] That motion, filed July 20, 2006, also contains a request that this Court rule on petitioner's already pending motions for discovery of certain medical records and counsel access. Those motions have been fully briefed and should be denied for the reasons stated in respondents' oppositions thereto.

                JEFFERY A. TAYLOR
                United States Attorney

                JOSEPH H. HUNT (D.C. Bar No. 431134)
                Branch Director

                VINCENT M. GARVEY (D.C. Bar No. 127191)
                Deputy Branch Director

                /s/ Michael P. Abate
                MICHAEL P. ABATE (IL. Bar No. 6285597)
                Attorney, U.S. Department of Justice
                Civil Division, Federal Programs Branch
                20 Massachusetts Avenue, N.W.  Room 7302
                Washington, D.C. 20530
                Tel: (202) 616-8209
                Fax: (202) 616-8470
                email: Michael.Abate@usdoj.gov

                *Attorneys for Respondents*

Dated: August 1, 2007

**CERTIFICATE OF SERVICE**

    I hereby certify that on the 1st day of August 2007, I caused the foregoing Respondents' Opposition to Petitioners' Motion for Immediate Discharge to be served on petitioner's counsel of record electronically by means of the Court's ECF system.

                                          /s/ Michael P. Abate