UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | | |
|---|---|---|---|
| SONDRA K. OMAR *et al.*, | : | | |
| Petitioners, | : | Civil Action No.: | 05-2374 (RMU) |
| v. | : | Document No.: | 29 |
| FRANCIS J. HARVEY *et al.*, | : | | |
| Respondents. | : | | |

MEMORANDUM OPINION

DENYING WITHOUT PREJUDICE THE PETITIONER'S EMERGENCY MOTION FOR ACCESS;
GRANTING THE PETITIONER'S EMERGENCY MOTION FOR
MEDICAL RECORDS AND PHOTOGRAPHS

I. INTRODUCTION

The instant motion requests that the court consider the appropriate response to an allegation of government torture of a prisoner. The petitioner's[1] attorney moves the court to order the government to grant him effective access to his client by transporting his client to a detention facility within the United States.[2] Pet'r's Reply at 2. He also requests that the government grant him access to his client's medical records and the putative photographs. *Id.*

---

[1] Parties are referred to throughout in the singular for readability.

[2] The petitioner's counsel initially argued that the government could provide adequate access to counsel by making the petitioner available at "any United States military installation, either in the United States, the Middle East, or Europe." Pet'r's Emerg. Renewed Request for Access and Mot. for Records ("Pet'r's Emerg. Mot.") at 4-5. After the government conceded the issue and made the petitioner available at a military installation in Iraq, the petitioner's attorney modified his request, complaining that "Respondents propose that undersigned counsel endanger themselves (at great expense) by traveling to Iraq for a one-hour visit with Mr. Omar . . . . [and] further propose that counsel make their own security arrangements." Pet'r's Reply at 1. The petitioner's counsel specifically requests the court "to exercise its power to require Respondents to bring Shawqi Omar to the United States." *Id.* at 2. Accordingly, the court only addresses this issue.

The government agrees to permit the petitioner access to his attorney but will not transfer him to a U.S. facility or make security arrangements for his attorney's travel to Iraq. Resp.'s Opp'n at 2 n.1. The government also agrees to consider the request for medical records and photographs as a request pursuant to the Privacy Act, 5 U.S.C. § 552a(d)(1). Because the briefing inadequately discusses the scope of access, focusing instead on the right to access, the court denies the motion to transfer the petitioner to the United States without prejudice. Because the respondent has established good cause to receive discovery, the court grants petitioner's request for medical records and photographs.

## II.  FACTUAL & PROCEDURAL BACKGROUND

The petitioner, an American citizen detained in Iraq, alleges that shortly after his arrest by U.S. military forces in Iraq in October 2004, government agents claiming to work for the FBI severely beat him and subjected him to electric shocks. Pet'r's Emerg. Renewed Request for Access and Motion for Records ("Pet'r's Emerg. Mot.") at 2. The petitioner further alleges that the agents threatened to kill him and rape his son and wife. *Id.* Afterwards, other military officials allegedly photographed the petitioner's body before a military physician examined him. *Id.* at 3. The government categorically denies the allegations of threatening behavior and physical mistreatment. Resp.'s Opp'n, Ex. 1 ¶¶ 2, 3, 5.

This court has previously entertained the arguments of these parties. In August 2005, the government sought to release the petitioner into the custody of the Iraqi government for trial in the Central Criminal Court of Iraq; the petitioner's attorney sought a preliminary injunction enjoining the government from doing so; and the court granted the preliminary injunction. *Omar*

*v. Harvey*, 416 F. Supp. 2d 19 (2006).  On appeal, the D.C. Circuit affirmed this court's ruling. *Omar v. Harvey*, 479 F.3d 1 (D.C. Cir. 2007).  With the jurisdictional issues resolved,[3] the court turns to the pending motions.

### III.  ANALYSIS

#### A.  The Court Denies the Request to Transfer the Petitioner

A prisoner's access to courts must be "adequate, effective, and meaningful." *Bounds v. Smith*, 430 U.S. 817, 822 (1977).  "Petitioners are entitled to present facts surrounding their confinement to the Court[, and] . . . the Court is authorized to craft the procedures necessary to make this possible." *Al Odah v. United States*, 346 F. Supp. 2d 1, 6 (D.D.C. 2004).  Because the petitioner has a limited ability to investigate facts and present claims, and because the issues are presented in his petition are complex, the petitioner's access to the courts would "mean[] nothing without access to counsel." *Al-Joudi v. Bush*, 406 F. Supp. 2d 13, 26 (D.D.C. 2005) (explaining that "counsel must have access to [Guantanamo detainees], must be able to communicate with them, and must be made aware if their clients are in such fragile physical condition that their future ability to communicate is in imminent danger"); *accord Al Odah v. United States*, 346 F. Supp. 2d 1, 8 (D.D.C. 2004) (discussing *Battle v. Armontrout*, 902 F.2d 701, 702 (8th Cir. 1990)).

Possibly in recognition of the weight of authority favoring access, the government has agreed to allow access between the petitioner and his attorney subject to the detainee visitation

---

[3]  On September 21, 2007, counsel for the government gave notice to the court that it filed a petition for a writ of certiorari requesting the Supreme Court to review the D.C. Circuit's decision in this case.

rules. Resp.'s Opp'n at 2 & Ex. B. While it has offered to facilitate scheduling an in-person visit, by "provid[ing] petitioners' counsel with a point of contact in Iraq that counsel may use to schedule an in-person visit," the respondents will not provide or aid in securing transportation, lodging or security in Iraq. *Id.* at 2 n.1. Counsel for the petitioner considers the onus of finding and paying for transportation, lodging and security in Iraq to be "unreasonable," effectively "render[ing] access unavailable." Pet'r's Reply at 1 (describing the security situation in Iraq as "fraught with mortal risk").

As a result of the government's efforts to make the petitioner available, the petitioner's attorney restyles her motion for "in-person access," Pet'r's Emerg. Mot. at 1, as a motion to transfer her client to the United States, Pet'r's Reply at 2 (requesting the court "to exercise its power to require Respondents to bring Shawqi Omar to the United States"). Counsel reasons that "military detention facilities exist within the United States secure enough to hold enemy combatants such as Yaser Hamdi and Jose Padilla" and the government "could easily transport Mr. Omar from Iraq to the United States." *Id.* at 2. In support, counsel cites *Hamdi v. Rumsfeld*, 542 U.S. 507, 510 (2004) and *United States v. Lindh*, 212 F. Supp. 2d 541, 547 (E.D. Va. 2002), but these cases are merely examples of the military, on its own prerogative, transferring U.S. citizen detainees to the United States. *Hamdi*, 542 U.S. at 510 (explaining that "upon learning that Hamdi is an American citizen, authorities transferred him to a naval brig in Norfolk, Virginia"); *Lindh*, 212 F. Supp. 2d at 547 (stating that "[f]ollowing his capture, Lindh was interrogated, transported to the United States, and ultimately charged in this district"). It is a non sequitur to conclude that, because the military is capable of transferring the petitioner to the United States and has transferred two similarly situated detainees, that the court should order the

4

government to transfer the petitioner in this case.

While it is clear that the petitioner has a right to counsel, the scope of that right remains ill-defined.  Without further briefing on the scope of the access requested, the court is not persuaded, at this time, to grant a motion to transfer the petitioner to the United States.  Accordingly, pending a renewed motion with comprehensive briefing (citing case law with pin cites and parentheticals) the court denies, without prejudice, the motion for access.  In addition, the court directs the government to show cause why it should not provide safe passage, safe and secure housing and appropriate security for petitioner's counsel while in Iraq for the purpose of consulting with her client.

### B. The Court Grants the Request for Access to Medical Records and Photographs

"There is no higher duty of a court, under our constitutional system, than a careful processing and adjudication of petitions for writs of habeas corpus." *Harris v. Nelson*, 394 U.S. 286, 292 (1969).  Once a court orders a response to a writ for habeas corpus,[4] "[d]iscovery is available only if the judge in the exercise of his discretion and for good cause shown grants leave." *Lonchar v. Thomas*, 517 U.S. 314, 326 (1996).  Aware that "confinement sometimes induces fantasy which has its basis in the paranoia of prison rather than in fact" the Supreme Court advised that "where specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is . . . entitled to relief, it is the duty of the court to provide the necessary facilities and procedures for an adequate inquiry." *Harris*, 394 U.S. at 300.

---

[4] On January 20, 2006, this court ordered the government to show cause why the petitioner's writ should not be granted.  Order (Jan. 20, 2006).

As a preliminary matter, the government requests the court to defer ruling on the petitioner's request because the government "will process his request . . . according to [its] policies governing Privacy Act requests," Resp.'s Opp'n at 6, and because the petitioner's request is "premature due to the unsettled nature of the Court's jurisdiction and uncertainty as regards the justiciability of this habeas petition," *id.* at 2. Addressing these arguments in turn, the government's assertion almost 17 months ago that they would process the requests for medical records and photographs has proven illusory. No determination or production has been made. With no indication that a resolution under the Privacy Act is forthcoming, the court will not subject counsel's request to indefinite delay. *Harris*, 394 U.S. at 291-92 (stating that "a habeas corpus proceeding must not be allowed to founder in 'procedural morass'" (quoting *Price v. Johnston*, 334 U.S. 266, 269 (1948)). As to the government's jurisdictional argument, this concern has been sufficiently assuaged by this circuit's ruling that this court "has jurisdiction to entertain Omar's habeas petition." *Omar*, 479 F.3d at 9.

The court now turns to the factual basis upon which the request for records and photographs is based. On April 13, 2006, the petitioner's attorney purportedly received a monitored telephone call from her client, Pet'r's Emerg. Mot., Ex. A ¶¶ 3, 5, in which the petitioner alleged that "Americans claiming to be Federal Bureau of Investigation agents" beat and subjected him to electric shocks during his confinement, *id.* at 1-3 & Ex. A ¶ 6. According to the petitioner, the agents also purportedly informed him that they could kill him and threatened to rape his wife and son. *Id.* After the alleged beating and shock treatment, the petitioner recalled that three military officials – Corporal Cohen, Sergeant Major Adams and Sergeant First Class Stewart – photographed his body and discussed whether to save the pictures to a computer

disk. *Id.* at 3, Ex. A ¶ 8. The petitioner also indicated that a military physician examined his injuries from the beating and electric shocks at a later date. *Id.* at 3, Ex. A ¶ 9.

The attorney for the petitioner attempts to substantiate these allegations by referencing similar claims made by detainees in Guantanamo Bay. *Id.* at 2 n.1. Counsel also references a formal government investigation that determined military personnel improperly implemented unauthorized interrogation techniques in Guantanamo and on several occasions impersonated FBI agents.[5] *Id.*, Ex. E. Yet another government report indicates the use of a tazer on a detainee in Iraq. *Id.*, Ex. C at 9-13. Furthermore, at least one military division has purportedly requested the use of low voltage electrocution during interrogations and noted "[t]he gloves are coming off" because "we want these [detainees] broken." *Id.* at 2 n.1, Ex. B.

The government disputes the petitioner's allegations, asserting – based on the declaration of Colonel Seitsinger – that the petitioner has not been beaten, threatened or subjected to electric shocks. Resp.'s Opp'n at 4 & Ex. A ¶¶ 2-3. Colonel Seitsinger's conclusions, in turn, are based "upon [his] personal knowledge and upon information made available to [him] in the performance of [his] official duties." *Id.*, Ex. A. Because Colonel Seitsinger – a Senior Legal Advisor – fails to provide an articulated basis for his personal knowledge of the events in question, and because he neither identifies the sources from which he obtained information nor explains the connection those sources have with the alleged events, the court affords his bare

---

[5]   Impersonating an FBI agent, however, is an approved technique. Pet'r's Emerg. Mot., Ex. E at 6.

conclusions little weight.[6]  On the other hand, the undisputed documentation of the military's use, or desired use, of techniques similar to those which the petitioner detailed provides a degree of credibility to the petitioner's claims.  Accordingly, good cause exists, and the court grants the petitioner's emergency motion for access to the requested medical and photographic materials.

## IV.  CONCLUSION

For the foregoing reasons, the court denies, without prejudice, the petitioner's emergency motion for transfer to the United States and grants the petitioner's emergency motion for medical records and photographs.  An order consistent with this Memorandum Opinion is separately and contemporaneously issued this 28th day of September, 2007.

RICARDO M. URBINA
United States District Judge

---

[6]  Indeed, Colonel Seitsinger resolutely declares that "[a]ny allegations by Mr. Omar of abuse and mistreatment have been investigated and determined to be unfounded."  Resp.'s Opp'n, Ex. A ¶ 5.  Without more details of the investigative process and reasons for the determination, this assertion is unpersuasive.  Additionally, provided an investigation has taken place, the medical records and photographs requested should be readily available and, therefore, minimally intrusive.