IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| SANDRA K. OMAR, *et al.*, | ) ) ) | |
| Petitioners, | ) ) | |
| v. | ) ) | Civil Action No. 05-2374 (RMU) |
| FRANCIS J. HARVEY, *et al.*, | ) ) ) | |
| Respondents. | ) ) | |

### MOTION FOR PRESERVATION ORDER

Petitioners move the Court for an order compelling the government to preserve any evidence related to Shawqi Omar's condition and treatment during his arrest, interrogation and confinement by U.S. officials in Iraq.[1]

### Statement

On December 12, 2005, Shawqi Omar, an American citizen detained in the physical custody of U.S. military officers in Iraq, filed for habeas corpus relief in this Court. On April 21, 2006, Mr. Omar's counsel, as a result of a telephone call from Mr. Omar, moved this Court for an order requiring production of Mr. Omar's medical records and photographs of Mr. Omar's body. *See* Emerg. Renewed Request for Access and Mot. for Records (dkt. 29) (April 21, 2006). During that call to counsel, Mr. Omar reported that upon his arrest on October 29, 2004, American officers had beaten him severely and applied electric shocks to his body. *See* Declaration of Susan L. Burke at ¶ 6 (dkt. 29-3) (April 21, 2006). Mr. Omar reported that three

---

[1] In filing this motion, Petitioners are cognizant of this Court's recent minute order "stay[ing] the case and terminat[ing] all remaining motions." Minute Order (Jan. 14, 2008). Petitioners, however, seek only to preserve all evidence – some of which has been produced in response to this Court's order – so that this action may be justly adjudicated once the Supreme Court has ruled on the issues before it. As set forth herein, undersigned counsel's recent visit to Mr. Omar prompted the filing of this motion.

U.S. military officers photographed his body shortly after he was beaten and subjected to electric shocks. *Id.* at ¶ 8. He further reported that he had been examined by a physician who had confirmed that the burn marks on his body resulted from electric shocks. *Id.* at ¶ 9.

On September 28, 2007, this Court ordered that the government produce "any and all medical records and photographs made regarding [Mr. Omar's] condition during his period of detention in Iraq." Order Denying Without Prejudice Pet'rs' Emerg. Mot. for Access; Granting Pet'rs' Emerg. Mot. for Medical Records and Photographs (dkt. 42) (Sept. 28, 2007). On November 13, 2007, the government produced 30 (thirty) photographs and photocopied medical records of and regarding Mr. Omar. The photographs show numerous recent injuries to Mr. Omar, including large lacerations on Mr. Omar's right eye and the right side of his forehead; severe bruising on his right shoulder, both of his arms, and his stomach; lacerations and an apparent puncture wound on his legs; and lacerations and multiple sets of stitches on his head. *See* Attachments (containing thirty photographs released by the government).

This Court's September 28 order also required the government to "show cause . . . why it should not provide safe passage, safe and secure housing and appropriate security for petitioner's counsel while in Iraq for the purpose of consulting with [Mr. Omar]." As a result, the government agreed to provide Mr. Omar's counsel with "the same degree of assistance offered to civilian counsel traveling to Iraq to represent United States service members in court-martial proceedings." Resp'ts.' Resp. to Order to Show Cause (dkt. 44) (Oct. 8, 2007). On January 13 through 16, 2008, counsel for Mr. Omar traveled to Iraq and met with Mr. Omar. Margulies Decl. ¶ 2. This visit was the first time since the litigation began that counsel have had an unmonitored conversation with Mr. Omar and the first time counsel have been permitted to meet with Mr. Omar. During the meetings, Mr. Omar reviewed the photographs produced by the

government. *Id.* at ¶ 3.  Mr. Omar reported that additional photographs were taken at the same time. *Id.*  He specifically recalled injuries to and photographs of his genitalia, *id.*, yet those pictures were not included among the photographs produced by the government.

Pursuant to Local Rule 7(m), Mr. Omar's counsel conferred with the government prior to filing this motion.  The government indicated its intent to oppose the motion. *Id.* at ¶ 4.

## Argument

This Court has already determined that good cause exists to allow discovery of medical records and photographic evidence of Mr. Omar's condition during his period of detention in Iraq.  *See* Mem. Op. Denying Without Prejudice Pet'rs' Emerg. Mot. for Access; Granting Pet'rs' Emerg. Mot. for Medical Records & Photographs (dkt. 43) (Sept. 28, 2007).  Now that it appears that the government has not produced all such evidence, the Court should issue an order compelling the preservation of that evidence.

This Court is empowered to enter such a preservation order when circumstances warrant it.  *See Pueblo of Laguna v. United States*, 60 Fed. Cl. 133, n.8 (2004); *United States v. Philip Morris USA, Inc.*, 327 F. Supp. 2d 21, 23 (D.D.C. 2004).  Entry of such a preservation order is warranted when there is substantial concern that evidence may be damaged or destroyed, the party seeking the evidence may be irreparably harmed if the evidence is damaged or destroyed, and the burden on the party required to preserve the evidence is not great. *Capricorn Power Co. v. Siemens Westinghouse Power*, 200 F.R.D. 429, 433-34 (W.D. Pa. 2004).  Indeed, the District Court for the District of Columbia has issued orders requiring the preservation of documents reflecting the treatment of detainees in U.S. custody in the past, even without any specific allegation that material evidence had not been produced. *See, e.g., Alsaaei v. Bush*, 2006 WL

2367270 at *3 (D.D.C. Aug. 14, 2006) (Slip Copy) (Roberts, J.); *Hamoud v. Bush*, 2006 WL 1876947 (D.D.C. July 5, 2006) (unpublished) (Roberts, J.).

The photographs produced to date undeniably support Mr. Omar's claim that he was tortured in U.S. custody. That claim is relevant to the facts and justifications that the government has alleged in support of its detention of Mr. Omar. If those facts and justifications have been gathered from Mr. Omar or other detainees through torture, they are necessarily unreliable. Mr. Omar first informed counsel of the existence of those photographs, which the government never admitted; having been proven correct once, there is no reason to doubt that additional photographs exist. The government's threshold failure to produce all requested photographic documentation of Mr. Omar's physical condition and treatment as a detainee, as well as the potentially exculpatory nature of the photos, means that there is a legitimate concern that the government will not maintain this and other sensitive evidence that it now possesses regarding either Mr. Omar's torture and mistreatment at the hands of U.S. officials, or the torture and mistreatment of other detainees who allegedly inculpated Mr. Omar. Under the circumstances, petitioners fear some such evidence may already have been destroyed. The loss of this evidence would irreparably harm Mr. Omar by depriving him of proof of the circumstances of his confinement and interrogation which will be essential to the merits of his habeas corpus claim. By contrast, any burden on the government in preserving evidence is minimal.

Petitioners reiterate that they are mindful of the stay already issued in this case. A preservation order is nevertheless warranted here because of the present and manifest concern that evidence may be lost or destroyed. Therefore, the Court should enter an order requiring the government to preserve any additional evidence or materials (including, but not limited to,

videotapes, photographs, or written records) related to Mr. Omar's condition and treatment during his arrest, interrogation, and confinement by U.S. officials in Iraq.

## Conclusion

For these reasons, petitioners respectfully request that the Court enter a preservation order clarifying its earlier order of production and requiring the government to maintain any evidence related to Mr. Omar's condition during his arrest, interrogation, and confinement in Iraq.

Dated: February 14, 2008   /s/ *Susan L. Burke*
Susan L. Burke (D.C. Bar No. 414939)
Katherine Hawkins
BURKE O'NEIL LLC
4112 Station Street
Philadelphia, PA  19127
Telephone: (215) 487-6590
Facsimile: (215) 482-0874
Joseph Margulies
MACARTHUR JUSTICE CENTER
NORTHWESTERN UNIVERSITY SCHOOL OF LAW
357 East Chicago Avenue
Chicago, IL  60611
Telephone: (312) 503-0890
Facsimile: (312) 503-1272

Aziz Z. Huq
Jonathan Hafetz
BRENNAN CENTER FOR JUSTICE
NEW YORK UNIVERSITY SCHOOL OF LAW
161 Avenue of the Americas, 12th Floor
New York, NY  10013
Telephone: (212) 998-6730
Facsimile: (212) 995-4550

Eric M. Freedman
250 West 94th Street
New York, NY  10025
Telephone: (212) 665-2713
Facsimile: (212) 665-2714

>Vincent J. Moccio
>Amy L. Magid
>**ROBINS, KAPLAN, MILLER & CIRESI L.L.P.**
>2800 LaSalle Plaza
>800 LaSalle Avenue
>Minneapolis, MN  55402
>Telephone: (612) 349-8500
>Facsimile: (612) 339-4181
>
>**COUNSEL FOR PETITIONERS**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| SANDRA K. OMAR, *et al.*, | ) ) ) | |
| Petitioners, | ) ) | |
| v. | ) ) | Civil Action No. 05-2374 (RMU) |
| FRANCIS J. HARVEY, *et al.*, | ) ) ) | |
| Respondents. | ) ) | |

**CERTIFICATE OF SERVICE**

I hereby certify that on February 14, 2007, I caused the following documents:

1. Motion for Preservation Order; and

2. Declaration of Joseph Margulies

to be filed electronically with the Clerk of Court through ECF, and that ECF will send an e-notice of the electronic filing to the following:

Michael P. Abate    michael.abate@usdoj.gov

Edward H. White    ned.white@usdoj.gov


　　　　　　　　　　　　　　　　 *s/ Katherine Hawkins*
　　　　　　　　　　　　　　　　Susan L. Burke
　　　　　　　　　　　　　　　　Katherine Hawkins
　　　　　　　　　　　　　　　　BURKE O'NEIL LLC
　　　　　　　　　　　　　　　　4112 Station Street
　　　　　　　　　　　　　　　　Philadelphia, PA  19127
　　　　　　　　　　　　　　　　Telephone: (215) 487-6590
　　　　　　　　　　　　　　　　Facsimile: (215) 482-0874