**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| SANDRA K. OMAR, *et al.*,      ) | |
|      ) | |
| Petitioners,      ) | |
|      ) | |
| v.      ) | Civil Action No. 05-2374 (RMU) |
|      ) | |
| PETE GEREN, *et al.*,      ) | |
|      ) | |
| Respondents.      ) | |

**RESPONDENTS' OPPOSITION TO**
**PETITIONERS' MOTION FOR PRESERVATION ORDER**

In an Order dated September 27, 2007, the Court required respondents to provide to petitioners "any and all medical records and photographs made regarding [Shawqi Omar's] condition during his period of detention in Iraq." Order Denying Without Prejudice the Petitioner's Emergency Motion for Access; Granting the Petitioner's Emergency Motion for Medical Records and Photographs ("Sept. 27 Order") (Dkt. no. 42). In compliance with that Order, and consistent with respondents' representation that they would provide such materials pursuant to a Privacy Act waiver signed by Mr. Omar, *see* Respondents' Opposition to Petitioners' Emergency Renewed Request For Access and Motion for Records ("Resp. Discovery Opp.") (Dkt. no. 30) at 6, respondents transmitted to petitioners' counsel some thirty photographs and more than one hundred thirty pages of detailed medical records.

Petitioners now allege that additional photographs of Mr. Omar were previously taken and never provided, and thus may have been destroyed. *See* Motion For Preservation Order ("Mot. For Preservation Order") (Dkt. no. 49) at 3-4; Declaration of Joseph P. Margulies ("Margulies Decl.") ¶ 3. Petitioners thus seek a preservation order requiring respondents to maintain a wide range of

information regarding not just Mr. Omar's medical records and photographs, but also "any additional evidence or materials" regarding, *inter alia*, his "condition and treatment during his arrest, interrogation, and confinement." *See* Mot. For Preservation Order at 4-5.

Such an order is neither necessary nor appropriate in the present circumstances. Respondents are well aware of their obligations to preserve documents relevant to petitioners' claims. Moreover, as noted in the accompanying Declaration of Col. Dave LeMauk, Deputy Director, Joint Security Office, HQ, US Central Command ("LeMauk Decl."), respondents have in fact provided all medical records and photographs of Mr. Omar that are known to be in respondents' custody; have confirmed that no other records or photographs are known to have existed (or are likely to have existed); and already have instructed the relevant military units with control over Mr. Omar's photographs and medical records to preserve those documents during the course of this litigation. Thus, petitioners can make no credible claim that material has been or will be destroyed.

In these circumstances, and as described in more detail below, petitioners simply cannot meet the standard necessary to demonstrate that a preservation order is warranted. Such orders cannot and should not be granted *pro forma*. Instead, a party seeking such an order must demonstrate that it is necessary in order to avoid the imminent destruction of documents or evidence, the loss of which would cause irreparable harm to the movant's case, and that any such order is appropriately tailored so as not to impose unnecessary burdens upon the non-moving party. Petitioners cannot make such a showing.

Finally, respondents must contest petitioners' recitation of the purported factual premise for their motion. In an attempt to bolster their claim that respondents have lost or destroyed photographs, petitioners assert that respondents subjected Mr. Omar, a United States citizen, to

torture in MNF-I detention facilities, and that the photographs respondents already have provided document "recent injuries" and "prove" that Mr. Omar was subject to such mistreatment. These accusations, which could not be more serious, are simply false. Contrary to petitioners' assertions, those thirty photographs do not document recent injuries but, rather, depict injuries that were sustained in October 2004 when Mr. Omar resisted capture by, and attempted to fire a weapon at, MNF-I forces that took him into custody. Put simply, they do not reflect mistreatment by respondents at any time. Additionally, Mr. Omar's detailed medical records are devoid of any indication that he suffered the two, specific injuries that his attorneys have alleged on his behalf during this litigation. *See* Emergency Renewed Request for Access and Motion for Records (Dkt. no. 29) at 1, 3 (alleging Mr. Omar was subjected to electric shocks); Mot. For Preservation Order at 1-3 (alleging Mr. Omar sustained injuries to his genitals and was subjected to electric shocks).

Petitioners' motion should be denied as unnecessary and without merit.

## ARGUMENT

### I.    RESPONDENTS ARE AWARE OF THEIR DUTY TO PRESERVE, AND ARE PRESERVING, MEDICAL RECORDS AND PHOTOGRAPHS OF SHAWQI OMAR

A preservation order simply is not necessary in this case because respondents are well aware of their duty to preserve documents responsive to this Court's September 27, 2007 Order – to wit, "any and all medical records and photographs made regarding [Shawqi Omar's] condition during his period of detention in Iraq." Sept. 27 Order. Respondents have not destroyed any of Mr. Omar's medical records and photographs, and will not destroy them during the pendency of this litigation. *See* LeMauk Decl. ¶ 10 ("HQ USCENTCOM has directed its subordinate units to preserve all of Mr. Omar's existing and future medical records and photographs during the pendency of this litigation.").

A preservation order – which would require nothing more than this – is therefore unnecessary.

Respondents' affirmative representation is more than sufficient to alleviate any concern that they will fail to maintain documents responsive to this Court's September 27, 2007 Order. But even absent this representation, a preservation order would not be necessary; respondents, as federal officials, are entitled to a presumption "that they will act properly and according to law." *Federal Communications Comm'n v. Schreiber*, 381 U.S. 279, 296 (1965). *See also Hester v. Bayer Corp.*, 206 F.R.D. 683, 685 (M.D. Ala. 2001) (noting that, even in a case involving private parties, "[t]o supplement every complaint with an order requiring compliance with the Rules of Civil Procedure would be a superfluous and wasteful task, and would likely create no more incentive upon the parties than already exists.").

## II.    PETITIONERS HAVE NOT MET THEIR BURDEN OF DEMONSTRATING THAT A PRESERVATION ORDER IS NECESSARY AND APPROPRIATE

"The issuance of a preservation order is by no means automatic, even in a complex case." *Treppel v. Bovail Corp.*, 233 F.R.D. 363, 369 (S.D.N.Y. 2006); *see also* Fed. R. Civ. P. 26(f), advisory committee's note (2006) (noting that Rule 26(f)'s requirements "do[] not imply that courts should routinely enter preservation orders" and that "[a] preservation order entered over objections should be narrowly tailored"). Instead, as petitioners concede, a party seeking a preservation order must make a multi-part showing not dissimilar from that required to obtain preliminary injunctive relief. *See, e.g.*, Mot. For Preservation Order at 3 (citing three-part showing required by *Capricorn Power Co., Inc. v. Siemens Westinghouse Power Corp.*, 200 F.R.D. 429, 433-34 (W.D. Pa. 2004)).[1]

---

[1] Indeed, "[s]ome courts have taken the position that a party seeking a preservation order must meet the standards for obtaining injunctive relief." *Treppel*, 233 F.R.D. at 370; *see also Battayav v. Bush*, No. 05-CV-714 (D.D.C.) (RBW) (dkt no. 12) (denying request for preservation order, and holding that "'a motion to preserve evidence is an injunctive remedy and should only issue

The moving party also bears the burden of establishing that a preservation order is warranted. *See Treppel*, 233 F.R.D. at 370-72 (party seeking a preservation order bears the burden of establishing the risk that evidence would be lost or that inadequate retention procedures were in place); *Capricorn Power Co., Inc.*, 200 F.R.D. at 438 (denying motion for preservation order because movant failed to demonstrate "a specific, imminent threat [of document destruction] supported by the record").

Under the *Capricorn Power* balancing test, around which petitioners frame their motion, the Court must weigh three factors in considering whether a preservation order is warranted: "1) the level of concern the court has for the continuing existence and maintenance of the integrity of the evidence in question in the absence of an order directing preservation of the evidence; 2) any irreparable harm likely to result to the party seeking the preservation of evidence absent an order directing preservation; and 3) the capability of an individual, entity, or party to maintain the evidence sought to be preserved . . . ." *See id.* at 433-34. Contrary to petitioners' assertions, none of these factors support the instant application for a preservation order.

*First*, petitioners' asserted "fear" that evidence of Mr. Omar's medical condition or injuries "may already have been destroyed" is unfounded. Mot. For Preservation Order at 4. In order to accept petitioners' allegation, this Court would have to assume that respondents failed to preserve evidence of Mr. Omar's medical condition and/or to fully comply with the Court's order to provide all medical records and photographs made regarding Mr. Omar's condition during his detention.

---

upon an adequate showing that equitable relief is warranted'") (citing *Madden v. Wyeth*, No. 3-03-CV-0167-R, 2003 WL 21443404, at *1 (N.D. Tex. Apr. 16, 2003)); *Pepsi-Cola Bottling Co. of Olean v. Cargill, Inc.*, Civ. No. 3-94-784, 1995 WL 783610, at *3-*4 (D. Minn. Oct. 20, 1995); *Humble Oil & Refining Co. v. Harang*, 262 F. Supp. 39, 42-43 (E.D. La. 1966)).

That assumption gets it precisely backwards. "Common law has long recognized a presumption of regularity for actions and records of public officials." *Riggs Nat. Corp. & Subsidiaries v. C.I.R.*, 295 F.3d 16, 20 (D.C. Cir. 2002) (citing *United States v. Chemical Foundation*, 272 U.S. 1, 14-15 (1926); *American Fed'n of Gov't Employees v. Reagan*, 870 F.2d 723, 727-28 & n. 33 (D.C. Cir. 1989)). As the Supreme Court noted, mere allegations of bad faith are insufficient to defeat this presumption of regularity; rather, it requires "clear evidence to the contrary." *See Chemical Foundation, Inc.*, 272 U.S. at 14-15; *see also National Archives and Records Admin. v. Favish*, 541 U.S. 157, 174 (2004) (stating that where the presumption of regularity is applicable, "clear evidence is usually required to displace it"); *Beverly Enterprises, Inc. v. Herman*, 130 F. Supp. 2d 1,8 (D.D.C. 2000) (Urbina, J.) ("When a party accuses an agency of bad faith, the agency is entitled to a presumption of administrative regularity and good faith that must be overcome with evidence."). Petitioners' hearsay statement alleging that other photographs might exist (or might have existed) is insufficient to satisfy this demanding "clear evidence" standard.

Moreover, to find petitioners' allegation credible, this Court similarly would have to discount the declaration submitted by Col. LeMauk, which makes clear that (1) respondents located and provided all medical records and photographs known to have existed of Mr. Omar, and (2) a re-examination of the reports, files, and databases of the relevant units in Iraq, as well as of Mr. Omar's medical records, found no evidence or indications that Mr. Omar's genitals were ever injured or photographed. *See* LeMauk Decl. ¶¶ 7-8. This type of declaration, affirming that the government reasonably searched for, and provided, all responsive records, is entitled to a presumption of good faith that cannot be overcome by mere speculation to the contrary. *Cf., e.g.*, *Safecard Services, Inc v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991) ("Agency affidavits are accorded a presumption of

good faith, which cannot be rebutted by 'purely speculative claims about the existence and discoverability of other documents.'") (*quoting Ground Saucer Watch, Inc. v. CIA*, 692 F.2d 770, 771 (D.C. Cir. 1981)); *Exxon Corp. v. FTC*, 384 F. Supp. 755, 759-60 (D.D.C. 1974) (upholding sufficiency of search declaration by supervising official who directed that a search be performed and certified that all agency components likely to have responsive documents performed the requested search and produced responsive materials).

*Second*, for reasons noted above, petitioners cannot demonstrate that they will be irreparably harmed absent the requested preservation order.  Respondents are aware of their obligation to preserve Mr. Omar's photographs and medical records and will do so.  Indeed, respondents have already provided such materials.  *See* LeMauk Decl. ¶¶ 4-5, 8.  And respondents will continue to maintain any existing and future medical records and photographs of Mr. Omar during the pendency of the litigation.  *See* LeMauk Decl. ¶ 10.[2]

─────────────────────

[2] Petitioners cannot meet the "irreparable harm" test for a separate, independent reason.  The purpose of petitioners' habeas suit is to seek release from custody, not to obtain a modification of the conditions of Mr. Omar's treatment or confinement.  *See Wilkinson v. Dotson*, 544 U.S. 74, 79, 80 (2005) (explaining that the "core" relief afforded by the writ of habeas corpus is "immediate release or a shorter period of confinement") (internal quotation marks omitted); *id.* at 86 (Scalia, J., concurring) ("It is one thing to say that permissible habeas relief, as our cases interpret the statute, includes ordering a quantum change in the level of custody, such as release from incarceration to parole. It is quite another to say that the habeas statute authorizes federal courts to order relief that neither terminates custody, accelerates the future date of release from custody, nor reduces the level of custody.") (internal quotation marks and citation omitted).  Indeed, several courts have affirmatively held that conditions of confinement claims that do not seek accelerated release from custody are not within the scope of the writ of habeas corpus.  *See, e.g.*, *Cochran v. Buss*, 381 F.3d 637, 639 (7th Cir. 2004); *Carson v. Johnson*, 112 F.3d 818, 820-21 (5th Cir.1997); *McIntosh v. United States Parole Commission*, 115 F.3d 809, 811-12 (10th Cir. 1997); *Badea v. Cox*, 931 F.2d 573, 574 (9th Cir. 1991).  In light of these limitations on the scope of the remedy sought, it is not clear how petitioners' ability to argue that MNF-I lacks authority to detain Mr. Omar as an enemy combatant and security internee will be "irreparably" damaged without material that they allege depicts injuries Mr. Omar sustained while in custody.

*Third*, and finally, petitioners' proposed preservation order would place an excessive burden upon the government. The specific preservation order they request seeks to "requir[e] the government to preserve any additional evidence or materials (including, but not limited to, videotapes, photographs, or written records) related to Mr. Omar's condition and treatment during his arrest, interrogation, and confinement by U.S. officials in Iraq." Mot. For Preservation Order at 4-5. That request is *far* broader than the information to which this Court has deemed plaintiff entitled at this stage – namely, his medical records and photographs. Because discovery in habeas cases is only permitted on a limited basis and upon a showing of good cause, *see Harris v. Nelson*, 394 U.S. 295, 300 (1969), petitioners' request is both overbroad and unduly burdensome at the present time. *See* Resp. Discovery Opp. at 3-5 (arguing that discovery is neither legally nor factually warranted).

## III.   RESPONDENTS HAVE NOT SUBJECTED MR. OMAR TO TORTURE OR MISTREATMENT

Finally, it must be noted that petitioners' repeated allegations that Mr. Omar has been subjected to torture by respondents are flatly contradicted by the record in this case. In an attempt to bolster their new allegations of injury and claims of missing evidence, petitioners suggest that the photographs of Mr. Omar produced by respondents "show numerous *recent* injuries," *id.* at 2 (emphasis added), and "undeniably support Mr. Omar's claim that he was *tortured* in U.S. custody," id. at 4 (emphasis added). This argument is both misleading and inappropriate. The photographs of Mr. Omar are not recent and certainly do not prove that he was tortured while in MNF-I custody. On the contrary, they were taken at the time of his processing into the MNF-I facility and depict injuries that "would have pre-dated his arrest or would have occurred during the course of his apprehension" – at which time he resisted capture, attempted to fire a weapon at MNF-I personnel,

and was subdued by "sufficient and appropriate force." Declaration of Col. Mark W. Seitsinger (Dkt. no. 30-2) ("Seitsinger Decl.") ¶ 4; LeMauk Decl. ¶ 9 ("The relevant units in Iraq also indicated that the injuries depicted in the photographs were those sustained during the struggle that ensued when Mr. Omar resisted capture and attempted to fire a weapon at MNF-I forces. These injuries were photographed as part of Mr. Omar's in-processing to a detention facility."). Col. Seitsinger's declaration makes clear in no uncertain terms that Mr. Omar's allegations of torture were investigated and found to be without merit. *See* Seitsinger Decl. ¶¶ 2, 3, 5.

Nor is there any evidence in Mr. Omar's medical records that he actually sustained either of the specific injuries that were alleged in his attorneys' declarations, and that served as the basis for his discovery motions and the instant motion for a preservation order. As Col. LeMauk noted, "[t]he medical records and photographs compiled showed no indication of injury to Mr. Omar's genitals and contained no photographs of Mr. Omar's genitalia." *See* LeMauk Decl. ¶ 7. "Furthermore, the medical records contain no specific discussion or mention of any injuries, to the genitalia or otherwise, sustained by electric shock." *Id.* The silence as to these alleged injuries is telling; as petitioners themselves note, Mr. Omar's medical records contain detailed descriptions of injuries he sustained at the time of his capture. *See* Mot. For Preservation Order at 2 (noting detailed documentation of Mr. Omar's injuries). Those medical records also recount Mr. Omar's recovery from those injuries, as well as additional, minor health issues he experienced while in MNF-I custody. Had Mr. Omar also suffered severe bruising of his genitalia or injuries as a result of electric shocks, it would be reasonable to assume that those injuries, too, would be noted and discussed in these detailed medical records. Yet they are not – a fact petitioners omit even as they recount Mr.

Omar's original allegations of mistreatment.[3]

## CONCLUSION

For all the foregoing reasons, petitioners' motion for a preservation order should be denied.

Dated: <u>February 28, 2008</u>                                     Respectfully Submitted,

JEFFREY S. BUCHOLTZ
Acting Assistant Attorney General

CARL J. NICHOLS
Deputy Assistant Attorney General

JEFFERY A. TAYLOR
United States Attorney

JOSEPH H. HUNT (D.C. Bar No. 431134)
Branch Director

VINCENT M. GARVEY (D.C. Bar No. 127191)
Deputy Branch Director

<u>/s/ Michael P. Abate</u>
MICHAEL P. ABATE (IL. Bar No. 6285597)
Attorney, U.S. Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Avenue, N.W.  Room 7302
Washington, D.C. 20530
Tel: (202) 616-8209
Fax: (202) 616-8470
email: Michael.Abate@usdoj.gov

*Attorneys for Respondents*

---

[3] The fact that these records nowhere mention the allegations of electric shock renders curious petitioners' claim that Mr. Omar was previously "proven correct" with regard to the allegations in the declaration filed by his attorney, Susan Burke. *See* Mot. For Preservation Order at 4. On the contrary, the lack of support for this prior allegation of injury only undermines the credibility of the new assertions of mistreatment (which are, as noted, contradicted by the LeMauk and Seitsinger Declarations, as well as by the photographs and the medical records already produced).

-10-

**CERTIFICATE OF SERVICE**

I hereby certify that on the 28th day of February 2008, I caused the foregoing

Respondents' Opposition to Petitioners' Motion for a Preservation Order to be served on

petitioners' counsel of record electronically by means of the Court's CM/ECF system.


*/s/ Michael P. Abate*