**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| SANDRA K. OMAR, *et al.*, ) | |
| ) | |
| Petitioners, ) | |
| ) | |
| v. ) | Civil Action No. 05-2374 (RMU) |
| ) | |
| PETE GEREN, *et al.*, ) | |
| ) | |
| Respondents. ) | |

DECLARATON OF COL DAVID LEMAUK

I, Colonel David LeMauk, pursuant to 28 U.S.C. § 1746, hereby declare as follows:

1. I currently serve as Deputy Director, Joint Security Office, HQ, US Central Command (HQ USCENTCOM). In my position as Deputy Director of the Joint Security Office, I am responsible for managing oversight of detention operations in the HQ USCENTCOM area of operations, including Iraq. The statements in this declaration are based upon information made available to me in the performance of my official duties.

2. This office, which provides oversight of the detention operations of units within the operational control of HQ USCENTCOM, including the units operating in Iraq as part of the Multi National Force—Iraq that were involved in the capture of and continued detention of Mr. Shawqi Omar, assisted in the collection of Mr. Omar's medical records and photographs.

3. Subsequent to the 28 September 2007 Order from the United States District Court for the District of Columbia, and consistent with the Privacy Act waiver signed by Mr. Omar, this command coordinated with the military units in Iraq most likely to have responsive documents ("relevant military units") to produce any and all medical records and photographs made regarding Omar's condition during his detention in Iraq.

4. This command tasked the military units in Iraq that were involved with Mr. Omar's initial capture, in-processing, medical treatment, and continued detention to search their files for the relevant records and photographs. These military units confirmed that they conducted comprehensive searches for all photographs and medical records and forwarded all responsive materials to this office.

5. This command sent all medical records and photographs that were found as part of this search to the Joint Staff and Department of Defense for forwarding to the Department of Justice and subsequent delivery to Mr. Omar's counsel. The detaining unit in Iraq reported that it also provided these same documents and photographs to Mr. Omar himself.

6. This office recently learned that Mr. Omar's attorney submitted a declaration in this litigation stating that during an attorney-client consultation in Iraq, Mr. Omar claimed that his genitals had been injured and that military personnel photographed such injuries.

7. The medical records and photographs compiled showed no indication of injury to Mr. Omar's genitals and contained no photographs of Mr. Omar's

genitalia. Furthermore, the medical records contain no specific discussion or mention of any injuries, to the genitalia or otherwise, sustained by electric shock.

8. In light of the allegation advanced in the declaration of Mr. Omar's attorney, HQ USCENTCOM tasked the relevant units in Iraq to re-examine their files and databases to see if any such photographs exist, and further attempt to determine whether any such photographs ever existed. The relevant units in Iraq reported back that they re-examined all detention and medical files and databases in their control and found no additional pictures of Shawqi Omar. These units further reported that in trying to determine if any such pictures might have existed, they re-examined their files, reports, and databases, as well as Mr. Omar's medical records. The relevant units in Iraq reported that there was no indication that pictures of Mr. Omar's genitals were ever taken or ever existed, and found no evidence of injuries to Mr. Omar's genitals or reports suggesting that his genitals had been injured. Additionally, the relevant units in Iraq reported that since receiving the photographs, Mr. Omar never made any comments or complaints that photographs were missing.

9. The relevant units in Iraq also indicated that the injuries depicted in the photographs were those sustained during the struggle that ensued when Mr. Omar resisted capture and attempted to fire a weapon at MNF-I forces. These injuries were photographed as part of Mr. Omar's in-processing to a detention facility. The closest injury he had to the genitals, per the doctor's notes in the medical records, was an injury to his right hip. The most

significant injuries consisted of a severe calf avulsion and scalp lacerations requiring staples.

10. HQ USCENTCOM has directed its subordinate units to preserve all of Mr. Omar's existing and future medical records and photographs during the pendency of this litigation.

I declare under the penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on __27__ February 2008.

_____
DAVID LEMAUK
Colonel, U.S. Army
Deputy Director, Joint Security Office
HQ US CENTRAL COMMAND