**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

SANDRA K. OMAR *et al.*,            :
                                    :
              Petitioners,          :       Civil Action No.:      05-2374 (RMU)
                                    :
       v.                           :       Re Document No.:      59
                                    :
PETE GEREN *et al.*,                :
                                    :
              Respondents.          :

<u>MEMORANDUM OPINION</u>

GRANTING THE RESPONDENTS' MOTION TO DISMISS THE AMENDED PETITION
FOR A WRIT OF HABEAS CORPUS

# I.  INTRODUCTION

This matter is before the court on the respondents' motion to dismiss the petitioners'

amended petition for a writ of habeas corpus.  The petitioner,[1] an American citizen detained in

Iraq by the United States military, commenced these proceedings to prevent his transfer to the

custody of Iraqi authorities to face criminal charges.  In his amended petition, the petitioner

principally contends that he is entitled to such relief because his transfer would violate the

Foreign Affairs Reform and Restructuring Act ("the FARR Act"), which implements

domestically the Convention Against Torture ("CAT") and prohibits the government from

transferring an individual to a country in which he or she will be subject to torture.  The

respondents move to dismiss the amended petition, arguing that the amended petition fails to

state a claim on which relief can be granted.

The court concludes that because the FARR Act limits judicial review to claims

challenging a final order of removal by immigration authorities – which is not the case here – the

---

[1]    There are three petitioners in this case, two of whom are acting as "next friends" of petitioner
Shawqi Ahmad Omar.  Because Shawqi Ahmad Omar is the only petitioner facing transfer to
Iraqi custody, the court refers to him as the "petitioner" in the singular.

statute does not provide the petitioner a grounds for habeas relief.  In addition, the court

concludes that the other bases for relief asserted in the amended petition are foreclosed by the

Supreme Court's ruling in *Munaf v. Geren*, 128 S. Ct. 2207 (2008).  Accordingly, the court

grants the respondents' motion to dismiss the amended petition.


## II.  FACTUAL & PROCEDURAL BACKGROUND

The petitioner is an American citizen detained in Iraq by the Multinational Force – Iraq

("MNF-I"), based on his suspected role in facilitating insurgent activities.[2]  Respts' Mot. to

Dismiss the Am. Pet. ("Respts' Mot.") at 2-3.  On December 12, 2005, the petitioner's wife and

son filed a next-friend habeas corpus petition on his behalf in this court.  Pet. For Writ of Habeas

Corpus ("Pet.") ¶ 2.  On February 2, 2006, after receiving an e-mail from the respondents stating

that "a determination was previously made to refer his case to the Central Criminal Court of

Iraq," counsel for the petitioner filed a motion for an *ex parte* temporary restraining order

("TRO") to prevent the transfer.  Petr's Suppl. Mem. in Supp. of Mot. for a TRO at 3.  On

February 3, 2006, the court granted that motion and issued a temporary restraining order valid

until February 13, 2006.  Order Granting *Ex Parte* TRO (Feb. 3, 2006).  On February 13, 2006,

the court granted the motion for a preliminary injunction, and ordered that "the respondents, their

agents, servants, employees, confederates, and any persons acting in concert or participation with

them . . . not remove the petitioner" from United States custody.  Order Granting Prelim. Inj.

(Feb. 13, 2006).

On review, the Circuit affirmed the order granting the motion for a preliminary

---

[2]     A detailed account of the factual background of this case can be found in the Supreme Court's
decision dismissing the petitioner's original habeas petition.  *See Munaf v. Geren*, 128 S. Ct.
2207, 2214-15 (2008).

injunction.  *Omar v. Harvey*, 479 F.3d 1 (D.C. Cir. 2007), *reh'g denied en banc*, (May 24, 2007).

The Supreme Court subsequently granted the respondents' petition for a writ of certiorari and

consolidated the appeal with a separate petition for a writ of certiorari granted in an action

captioned *Munaf v. Geren*.  *See Omar v. Harvey,* 479 F.3d 1 (D.C. Cir. 2007), *cert. granted sub*

*nom. Geren v. Omar*, 128 S. Ct. 741 (2007).  On June 12, 2008, the Supreme Court vacated the

preliminary injunction and remanded the case for further proceedings.  *Munaf v. Geren*, 128 S.

Ct. 2207, 2228 (2008)*, reh'g denied*, 129 S. Ct. 19 (Aug. 18, 2008).

On July 24, 2008, the petitioner filed an amended petition for a writ of habeas corpus,

asserting claims under the FARR Act, the Fifth and Eighth Amendments to the U.S.

Constitution, the Citizen Non-Detention Act and international law.  *See generally* Am. Pet. for

Writ of Habeas Corpus ("Am. Pet.").  At the heart of the petitioner's amended petition is his

contention that he would likely be tortured if transferred to the custody Iraqi authorities.  *Id*.  On

November 25, 2008, the respondents filed the instant motion to dismiss, asserting that the

petitioner failed to state a claim under the FARR Act and that the other bases for relief cited in

the amended petition likewise fail to justify the relief sought.  *See generally* Respts' Mot.  The

petitioner opposed the motion, which is now fully submitted.  *See generally* Petr's Opp'n.  The

respondents subsequently filed a notice of supplemental authority regarding the Circuit's recent

decision in *Kiyemba v. Obama*, 61 F.3d 509 (D.C. Cir. 2009).  Notice of Supplemental Authority

in Supp. of Respts' Mot. to Dismiss at 1-2.  The court turns to the respondents' arguments for

dismissal.

## III.  ANALYSIS

### A.  The FARR Act Does Not Provide a Legal Basis for the Relief Sought

In their motion to dismiss, the respondents assert that the plaintiff has no claim for relief under the FARR Act because the Act does not apply to a detainee who is already physically present in the nation to which his transfer is threatened, and because the Act precludes judicial review of claims under the Act except in the context of final orders of removal by immigration authorities.  Respts' Mot. at 7-11; Respts' Reply at 2-12.  Additionally, the respondents assert that separation of powers concerns counsel against interpreting the FARR Act in a way that would interfere with the Executive branch's historical authority in the realm of military and foreign affairs.  Respts' Reply at 12-13.

In response, the petitioner contends that Congress's inclusion in the FARR Act of the phrase "expel, extradite, *or otherwise effect the involuntary return*" of a person to torture indicates its intent to "prohibit without exception any transfer by U.S. personnel, wherever located, that ends in torture."  Petr's Opp'n at 8-11.  Additionally, the petitioner argues that the FARR Act does not contain the clear and unambiguous language required to strip federal courts of habeas jurisdiction. *Id.* at 11-14.  Finally, the petitioner asserts that the Suspension Clause[3] prohibits the court from construing the FARR Act so as to preclude habeas jurisdiction.  *Id.* at 17.

Article 3 of the CAT provides that "[n]o State Party shall expel, return . . . or extradite a person to another State where there are substantial grounds for believing that he would be in danger of being subjected to torture."  Convention Against Torture and Other Cruel, Inhuman,

---

[3]     Article I, § 9 of the U.S. Constitution states that "[t]he Privilege of the Writ of Habeas Corpus shall not be suspended, unless when in Cases of Rebellion or Invasion the public Safety may require it."  U.S. Const. art. I, § 9, cl. 2.

and Degrading Treatment or Punishment, art. 3, Dec. 10, 1984, S. Treaty Doc. No. 100-200

(1988), 1465 U.N.T.S. 85.[4]  The FARR Act, which implements U.S. obligations under the CAT,

provides that "[i]t shall be the policy of the United States not to expel, extradite, or otherwise

effect the involuntary return of any person to a country in which there are substantial grounds for

believing the person would be in danger of being subjected to torture, regardless of whether the

person is physically present in the United States."  Pub. L. No. 105-277, div. G, 112 Stat. 2681-

822 (codified at 8 U.S.C. § 1231 note), § 2242(a).

The FARR Act severely limits the availability of judicial review of CAT claims,

providing that

> [n]otwithstanding any other provision of law . . . nothing in this section . . . shall
> be construed as providing any court jurisdiction to consider or review claims
> raised under the Convention [Against Torture] or this section . . . except as part of
> the review of a final order of removal pursuant to section 242 of the Immigration
> and Nationality Act (8 U.S.C. § 1252).

*Id*. § 2242(d).

Relying principally on the Supreme Court's ruling in *INS v. St. Cyr*, 533 U.S. 289 (2001),

the petitioner contends that § 2242(d) does not strip the district courts of habeas jurisdiction over

FARR Act claims.  *See* Petr's Opp'n at 11-18.  In *St. Cyr*, the Supreme Court declined to

construe provisions of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996

("IIRIRA") so as to preclude judicial review of an order of removal.  *St. Cyr*, 533 U.S. at 298.

The Court observed that there exists a "longstanding rule requiring a clear statement of

congressional intent to repeal habeas jurisdiction."  *Id*.  Because Congress failed to articulate a

---

[4]	After President Reagan signed the CAT on April 18, 1988, the Senate conditioned its consent on
	its declaration that "the provisions of Articles 1 through 16 of the Convention are not self-
	executing." *Mironescu v. Costner*, 480 F.3d 664, 666 (4th Cir. 2007) (quoting 136 Cong. Rec.
	S17486-01, S17492 (1990)).  In light of this conditioned ratification, Congress enacted the FARR
	Act to implement the CAT.  *Id*.

"clear, unambiguous, and express statement of congressional intent to preclude judicial consideration on habeas," the Court concluded that the IIRIRA did not eliminate habeas jurisdiction.  *Id.* at 314.

The petitioner notes that as in *St. Cyr*, several circuit courts have held that because 28 U.S.C. § 2242(d) does not contain a sufficiently clear and unambiguous expression of congressional intent to limit judicial review of habeas petitions brought under the FARR Act, that provision does not strip district courts of habeas jurisdiction over FARR Act claims.  *See Cadet v. Bulger*, 377 F.3d 1173, 1182-83 (11th Cir. 2004) (holding that because the FARR Act does not expressly mention "habeas corpus" or "28 U.S.C. § 2241," it does not eliminate habeas jurisdiction); *Singh v. Ashcroft*, 351 F.3d 435, 441 (9th Cir. 2003); *Ogbudimpka v. Ashcroft*, 342 F.3d 207, 215-18 (3d Cir. 2003); *Saint Fort v. Ashcroft*, 329 F.3d 191, 200-02 (1st Cir. 2003); *Wang v. Ashcroft,* 320 F.3d 130, 142 (2d Cir. 2003).

As the respondents correctly point out, however, the REAL ID Act of 2005 supersedes the holdings in these cases.  Respts' Mot. at 10-11.  The Act provides, in pertinent part, that

> [n]otwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of Title 28, or any other habeas corpus provision . . . a petition for review filed with an appropriate court of appeals in accordance with this section shall be the sole and exclusive means for judicial review of any cause or claim under the United Nations Convention Against Torture.

8 U.S.C. § 1252(a)(4).

This Circuit has expressly held that the above provision of the REAL ID Act eliminates habeas jurisdiction over FARR Act claims.  *Kiyemba v. Obama*, 561 F.3d 509, 511 (D.C. Cir. 2009), *reh'g denied* (July 27, 2009), *reh'g en banc denied* (July 27, 2009).  The petitioners in *Kiyemba*, nine ethnic Uighurs detained by the U.S. military in Guantanamo Bay, Cuba,

petitioned the district court for a writ of habeas corpus based on the FARR Act, seeking to prevent their transfer to a country that might detain or torture them. *Id*. at 511. The Circuit dismissed the petition, holding that "Congress limited judicial review under the Convention [Against Torture] to claims raised in a challenge to a final order of removal." *Id*. at 514-15 (citing *Munaf*, 128 S. Ct. at 2226). Because the Uighers were not challenging a final order of removal, the Circuit held that they could not succeed on the FARR Act claims asserted in their habeas petition. *Id*.; *accord Khouzam v. Attorney Gen. of the U.S.*, 549 F.3d 235, 245 (3d Cir. 2008) (holding that § 1252(a)(4) of the REAL ID Act precluded the district court from exercising jurisdiction over the petitioner's habeas petition); *Mironescu v. Costner*, 480 F.3d 664, 676-77 (4th Cir. 2007) (distinguishing *St. Cyr* on the grounds that there existed "a plausible reading of the statutes before the [Supreme] Court under which habeas review . . . was not barred," whereas § 2242(d) clearly precluded "consideration of CAT and FARR Act claims on habeas review"); *see also O.K. v. Bush*, 377 F. Supp. 2d 102, 118 n.17 (D.D.C. 2005) (holding that the FARR Act is "expressly limited to claims arising out of a final order of removal" and does not confer any legal rights outside of the removal setting); *Al-Anazi v. Bush*, 370 F. Supp. 2d 188, 194 (D.D.C. 2005) (asserting that the petitioners failed to reconcile how the explicit language of § 2242(d) of the FARR Act provides for binding rights outside the context of a final order of removal) (citation omitted); *but see Flores-Torres v. Mukasey*, 548 F.3d 708, 711 (9th Cir. 2008) (concluding that "[t]he jurisdiction-stripping provision [of the REAL ID Act] does not apply to federal habeas corpus petitions that do not involve final orders of removal") (citation omitted).

Despite differing circuit interpretations of the REAL ID Act's effect on habeas jurisdiction, this court is constrained by the binding precedent enunciated in *Kiyemba*. *See United States v. Torres*, 115 F.3d 1033, 1036 (D.C. Cir. 1997) (observing that "district judges . . .

are obligated to follow controlling circuit precedent until either [the Circuit] court, sitting en banc, or the Supreme Court, overrule it") (internal citation omitted).  Like the petitioners in *Kiyemba*, the petitioner here bases his habeas petition on the FARR Act.  Am. Pet. ¶¶ 37-39.  And like the petitioners in *Kiyemba,* the petitioner here is not challenging a final order of removal, but is instead seeking to enjoin his transfer to the custody of a foreign nation.  *See id.*  The court therefore concludes that the REAL ID Act of 2005 precludes the court's consideration of the petitioner's FARR Act claims.

The petitioner asserts that this conclusion runs afoul of the Suspension Clause because it would effectively "bar prisoners in such situations from pursuing any judicial recourse to review the legality of executive actions regarding their detention."  Petr's Opp'n at 17.  In so arguing, the petitioner echoes the concerns raised by Judge Griffith in his dissenting opinion in *Kiyemba*, in which he writes that the majority's holding would leave the petitioners without any opportunity to challenge the legality of their detention and transfer.  *See Kiyemba*, 561 F.3d at 526 (stating that "the constitutional habeas protections extended to . . . [alien] petitioners by *Boumediene*[6] will be greatly diminished, if not eliminated, without an opportunity to challenge the government's assurances that their transfers will not result in continued detention on behalf of the United States") (Griffith, J., dissenting).

Whatever the merit of these arguments,[7] this court is bound by the majority's holding in

---

[6]     *Boumediene v. Bush*, 128 S. Ct. 2229 (2008).

[7]     Indeed, the fact that the petitioner appears to have no avenue of judicial review would appear to implicate Suspension Clause concerns.  *See Khouzam v. Attorney Gen. of the U.S.*, 549 F.3d 235, 245-47 (3d Cir. 2008) (stating that although the REAL ID Act clearly deprives the judiciary of habeas jurisdiction over FARR Act claims, serious constitutional questions, such as the possibility of an unconstitutional suspension of the writ, would be raised if the petitioner were not afforded an alternative to the habeas review denied by § 1252(a)(4)).

*Kiyemba*, which – as evidenced by Judge Griffith's dissenting opinion – considered the
Suspension Clause issue raised here but nonetheless dismissed the petitioners' FARR Act
claims.[8]  *See id*. at 514-15.  Indeed, without explicitly addressing the issue, the majority in
*Kiyemba* suggests that these Suspension Clause concerns are trumped by the separation of
powers principles that preclude judicial second-guessing of the Executive's authority on matters
of foreign policy and diplomacy.  *See id*. at 514 (observing that "[t]he Judiciary is not suited to
second-guess . . . determinations that would require federal courts to pass judgment on foreign
justice systems and undermine the Government's ability to speak with one voice in this area")
(quoting *Munaf*, 128 S. Ct. at 2226); *see also Munaf*, 128 S. Ct. at 2213 (asserting that judicial
inquiry into the likelihood of torture would amount to "unwarranted judicial intrusion into the
Executive's ability to conduct military operations abroad").  Accordingly, the petitioner's
invocation of the Suspension Clause does not permit the court to deviate from *Kiyemba*'s
holding, which precludes a court from considering FARR Act claims asserted in a habeas
petition.  *Kiyemba*, 561 F.3d at 514-15.  As a result of the foregoing, the court grants the
respondents' motion to dismiss the petitioner's FARR Act claims.  *See Munaf*, 128 S. Ct. at 2228
(dismissing habeas petitions because the petitioners stated no claim for which relief could be
granted).

### B.  The Court Dismisses the Petitioner's Eighth Amendment Claim

The petitioner also contends that his transfer to Iraqi authorities would violate his Eighth
Amendment right to be free from cruel or unusual punishment because, under Iraqi law, he could

---

[8]  The fact that the petitioners in *Kiyemba* were not United States citizens, unlike the petitioner here, is of no legal moment.  *See Kiyemba v. Obama*, 561 F.3d 509, 514 n.4 (D.C. Cir. 2009) (stating that "[f]or present purposes, we assume arguendo these alien detainees have the same constitutional rights with respect to their proposed transfer as did the U.S. citizens facing transfer in *Munaf*").

be subjected to the death penalty despite the fact that his alleged crimes did not result in any

fatalities.  Am. Pet. ¶¶ 43-45.  The respondents assert that this line of argument is foreclosed by

the Supreme Court's ruling in *Munaf*.  Respts' Mot. at 15-16.

In *Munaf*, the Supreme Court held that "[t]hose who commit crimes within a sovereign's

territory may be transferred to that sovereign's government for prosecution."  128 S. Ct. at 2224-

25 (reasoning that the "same principles of comity and respect for sovereigns that preclude

judicial scrutiny of foreign convictions necessarily render invalid attempts to shield citizens from

foreign prosecution"); *see also Neely v. Henkel*, 180 U.S. 109, 125 (1901) (holding that habeas

corpus was not available to prevent the petitioner's extradition to Cuba, despite the fact that he

would not be afforded the full panoply of rights afforded to him by the U.S. Constitution in a

Cuban criminal proceeding).  As the *Munaf* Court explained,

> [t]he jurisdiction of a nation within its own territory is necessarily exclusive and
> absolute.  This is true with respect to American citizens who travel abroad and
> commit crimes in another nation whether or not the pertinent criminal process
> comes with all the rights guaranteed by our Constitution.  When an American
> citizen commits a crime in a foreign country he cannot complain if required to
> submit to such modes of trial and to such punishment as the laws of that country
> may prescribe for its own people.[9]

*Munaf*, 128 S. Ct. at 2222 (quoting *Schooner Exch. v. McFaddon*, 11 U.S. (7 Cranch) 116, 136

(1812); *Neely*, 180 U.S. at 123) (internal citations and quotation marks omitted).

The petitioner in the instant case traveled to Iraq of his own volition, and Iraq plainly has

the authority to prosecute him for any crimes he committed within its sovereign territory.  *Id.* at

2223.  *Munaf* therefore bars this court from issuing a writ of habeas corpus to protect the

---

[9]     The Court explained that this conclusion resulted from principles of international comity and
respect for foreign sovereigns, as well as separation of powers principles.  *See Munaf*, 128 S. Ct.
at 2224-25 (observing that "[e]ven with respect to claims that detainees would be denied
constitutional rights if transferred, we have recognized that it is for the political branches, not the
judiciary, to assess practices in foreign countries and to determine national policy in light of those
assessments").

petitioner from the Iraqi criminal justice system based on the Eighth Amendment.  *See id.*

(noting that "habeas is not a means of compelling the United States to harbor fugitives from the

criminal justice system of a sovereign with undoubted authority to prosecute them").

### C.  The Petitioner's Remaining Claims Are Barred From Reconsideration

Lastly, the petitioner asserts that his continued detention by the U.S. military violates the

Due Process Clause of the Fifth Amendment and the Citizen Non-Detention Act ("CNDA"), 18

U.S.C. § 4001(a).[12]  Am. Pet. ¶¶ 46-53.  The petitioner previously asserted both of these claims

in his original habeas petition that was filed in this court, *see* Pet. ¶¶ 39-42, 46-47, and dismissed

by the Supreme Court, *see Munaf*, 128 S. Ct at 2228.  Thus, the respondents move for dismissal

of these claims, asserting that both were previously adjudicated and should not be relitigated at

this juncture.  Respts' Mot. at 12-14, 16-20.

In response, the petitioner asserts that the *Munaf* Court did not consider the legality of the

petitioner's detention in light of the fact that the FARR Act renders the threatened transfer

illegal.  Petr's Opp'n at 18.  Because the legality of the petitioner's detention in the absence of

any authority to transfer him was not presented to any court, the petitioner argues that the Fifth

Amendment and CNDA claims asserted in the amended petition should not be dismissed.  *Id*. at

18-19.

Yet as previously discussed, the FARR Act does not provide a legal basis for prohibiting

---

[12]     Although the amended petition also asserts a claim under "international law," Am. Pet. ¶¶ 50-51,
the petitioner consents to the dismissal of his international law claims in his opposition to the
respondents' motion to dismiss, Pl.'s Opp'n at 18 n.9.  The court therefore dismisses that claim.

the petitioner's transfer to Iraqi authorities.  *See supra* Part III.B.1.  Accordingly, the petitioner

fails to distinguish the Fifth Amendment and CNDA claims raised in this original petition and

dismissed by the *Munaf* Court on this ground.

Indeed, the *Munaf* Court specifically rejected the petitioner's argument that the "Due

Process Clause includes a '[f]reedom from unlawful transfer' that is 'protected *wherever* the

government seizes a citizen.'"  *Munaf*, 128 S. Ct. at 2222 (citation omitted).  The Court noted its

disagreement with this assertion, observing that "[n]ot only have we long recognized the

principle that a nation state reigns sovereign within its own territory, we have twice applied that

principle to reject claims that the Constitution precludes the Executive from transferring a

prisoner to a foreign country for prosecution in an allegedly unconstitutional trial."  *Id*.  Because

the Supreme Court ruled on this precise issue, this court is precluded from reconsidering this

claim.  *See Role Models Am., Inc. v. Geren,* 514 F.3d 1308, 1311 (D.C. Cir. 2008) (holding that

courts are precluded from reconsidering issues that have already been decided in the same case)

(citing *Briggs v. Pa. R.R. Co.,* 334 U.S. 304, 306 (1948)).

Similarly, with respect to the petitioner's CNDA claim, this court is constrained by the

fact that the *Munaf* Court held that the petitioner failed in his original petition to state *any* claim

upon which relief could be granted.  *See Munaf*, 128 S. Ct. at 2228.  Because the petitioner raised

the CNDA claim in his original petition, Pet. ¶¶ 46-47, the claim has already been adjudicated,

and this court is precluded from reconsidering the issue.  *See Role Models Am.,* 514 F.3d at 1311.

At any rate, even if this court were to consider the CNDA claim raised in the amended

petition, the respondents would still prevail because the petitioner's detention is pursuant to

congressional authorization.  Section 4001(a) of the CNDA provides that "[n]o citizen shall be

imprisoned or otherwise detained by the United States *except pursuant to an Act of Congress*."

18 U.S.C. § 4001(a) (emphasis added).  In the Authorization for Use of Military Force Against Iraq Resolution of 2002 ("AUMF"), Congress authorized the President "to use the Armed Forces of the United States as he determines to be necessary and appropriate in order to: (1) defend the national security of the United States against the continuing threat posed by Iraq; and (2) *enforce all relevant United Nations Security Council resolutions regarding Iraq*."  Pub. L. No 107-243 § 3(a), 116 Stat. 1501 (emphasis added).  Additionally, pursuant to a United Nations Security Council Resolution, the MNF-I has "the authority to take all necessary measures to contribute to the maintenance of security and stability in Iraq."  U.N. Doc. S/RES/1546, ¶ 10 (June 8, 2004), *cited in Munaf*, 129 S. Ct. at 2213.  In accordance with this Resolution, the MNF-I conducts a variety of military activities, including detaining individuals who pose a threat to Iraqi security. *Munaf*, 128 S. Ct. at 2213, 2223.

Accordingly, because the United Nations Security Council Resolution authorizes the MNF-I to detain individuals in furtherance of the security and stability of Iraq, and because the AUMF authorizes the President to enforce all relevant Security Council Resolutions, the petitioner's detention is pursuant to an act of Congress.[13]  The court therefore dismisses the petitioner's claim that he is being detained in violation of the CNDA.

## IV.  CONCLUSION

For the foregoing reasons, the court grants the respondents' motion to dismiss the petitioner's amended petition for a writ of habeas corpus.  An Order consistent with this

---

[13]    Because the court determines that there is specific congressional authorization for the petitioner's detention, it need not address the respondents' assertion that the CNDA does not apply to military detention.

13

Memorandum Opinion is separately and contemporaneously issued this 28th day of September,

2009.


                                        RICARDO M. URBINA
                                        United States District Judge